In the Matter of the Petition of HENRY O. BUTTNER for a Determination as to the Validity, Construction or Effect of the Disposition of the Residuary Estate Contained in the Will of AMANDA F. BUTTNER, Late of the County of Westchester, Deceased.

HENRY O. BUTTNER, Appellant; WILLIAM WARD JOHNSON, as Executor, etc., of AMANDA F. BUTTNER, Deceased, and Others, Respondents.

Second Department, December 23, 1925.

Wills — construction — devise of residue in trust to pay over one-third of net income to each of three beneficiaries for life — on death of two beneficiaries one-half of principal was to be divided as directed and income of other half was to be paid to third beneficiary — will provided that if any bequest should lapse for any reason it should become part of residue and pass as provided by another provision of will — trust was entire and being for more than two lives in being was void in part — trust was valid as to one-half directed to be distributed at death of second beneficiary — part of principal of trust that failed became part of residue to be distributed as directed in will — allowances to counsel for remaindermen and trustee could be made by surrogate in excess of that stated in Surrogate's Court Act, § 278, but only in proceedings under Surrogate's Court Act, § 231-a.

A provision in a will devising the residue of the testatrix's estate in trust to pay one-third of the income to each of three beneficiaries for life and on the death of two beneficiaries to divide one-half of the principal among named legatees and to pay the income of the other half to the third beneficiary for life, sets up a trust which is invalid, in part, on the ground that it is for more than two lives in being.

That part of the trust which was to run for the lives of the two beneficiaries is valid.

The other part of the trust which was to run for the lives of the three beneficiaries is invalid and passes to the residue of the estate under a provision in the will that in case any legacy should lapse for any reason it should become a part of the residue and should be divided as provided in the will among named legatees.

The Surrogate's Court has the power to make allowances to counsel representing the remaindermen and the trustee in excess of that permitted under section 278 of the Surrogate's Court Act, but such allowances can be made only in a proceeding instituted under section 231-a of the Surrogate's Court Act, and since the required proceeding was not instituted, the allowance made by the surrogate was improper.

APPEAL by Henry O. Buttner from a decree of the Surrogate's Court of the county of Westchester, entered in the office of said Surrogate's Court on the 30th day of June, 1925, in a proceeding instituted by the appellant for a determination as to the validity, construction and effect of the disposition of the residuary estate made by Amanda F. Buttner, deceased, in and by her will, and which decree adjudges that the disposition made by the testatrix of her residuary estate in her will is valid.

*Ralph W. Crolly,* for the appellant.

*Wilson R. Yard,* for the respondent William Ward Johnson, executor and trustee.

*Arthur I. Strang,* for the respondents Emma M. Johnson and another.

*Henry P. Griffin,* special guardian for the respondents Dorothea E. Wurm and others.

YOUNG, J. Amanda F. Buttner, the decedent and testatrix, died a resident of Westchester county on November 6, 1922, leaving a will prepared by her attorney which was dated and executed on November 4, 1922, two days prior to her death, and which will was admitted to probate by the surrogate of Westchester county on December 6, 1922.

The decedent did not leave her surviving a husband, but left her surviving a son, Henry O. Buttner, the petitioner and appellant herein, her sole heir at law and next of kin.

The portion of decedent's will which concerns us upon this appeal is as follows:

" *Second.* I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed, wheresoever situated, whereof I may die seized or possessed, or to which I may be in any manner entitled, or in which I may be interested at the time of my death unto my TRUSTEES hereinafter named, as TRUSTEES, in trust nevertheless, for the uses and purposes hereinafter provided, with full power to collect the rents, income and profits therefrom and to sell and dispose of the same at public or private sale at such time and in such manner as they shall deem best; to lease, release, mortgage, grant, alien, bargain, sell, convey and assure the same at such times and in such manner as to them .

shall seem fit and necessary, and after paying my just debts, funeral expenses, taxes and other administration charges, to administer and distribute the rest and residue then remaining as follows:

" 1. To pay over to my grand-daughter, Helen Buttner, when she reaches the age of twenty-five years, the sum of FIVE HUNDRED DOLLARS, absolutely and forever.

" 2. To invest and reinvest the rest and remainder, and, after the deduction of necessary charges, to pay over, semi-annually, or oftener, in their discretion, one-third of the then net income, rents or profits thereon, to my beloved sister BERTHA SCHROEDER, during the term of her natural life; one-third to my son HENRY O. BUTTNER, during the term of his natural life, and the remaining one-third of said net income to EMMA M. JOHNSON, who was formally, though not legally, adopted by my late husband, Henry Buttner, and myself when she was about two years of age, and an orphan, was christened and confirmed at our request by the name of Emma Madeline Buttner, and who was brought up, treated as and looked upon and known generally as our daughter, and who has been a true, loving and dutiful daughter to us and especially to me in my declining years, to her own use and benefit during the term of her natural life.

" *Third.* Should one of the said life beneficiaries predecease me, and at the death of any one thereof, I hereby direct my said trustees to pay over the said net income, rents or profits equally to the survivors, share and share alike, during the term of their natural lives.

" *Fourth.* At the death of any two of the said life beneficiaries, leaving but one thereof surviving, I direct my said trustees to divide the residue of my said estate then remaining into two equal parts, and to distribute and pay over one of said parts equally amongst FRED C. FURCHT, son of said EMMA M. JOHNSON, DOROTHEA E. WURM and BEATRICE E. WURM, daughters of my nephew AUGUST C. WURM, any issue of my nephew, HENRY GEORGE WURM and of my nephews GEORGE MOELLER and WILLIAM MOELLER, equally, share and share alike. Should any of said persons predecease leaving them issue surviving at the time of such distribution, then and in that event, said issue is to take the share that the parent would have taken if living.

" *Fifth.* Upon the said event, I direct my said trustees to pay over the net income, rents and profits upon the other one-half to the surviving life beneficiary during the term of said beneficiary's natural life.

" *Sixth.* At the death of the last survivor of the three life beneficiaries aforesaid, I direct my said trustees to pay over and dis-

tribute the rest and residue of my estate then remaining and all accumulations thereon equally amongst the persons named in the ' Fourth ' paragraph of this my Will in the same proportion, shares and manner as therein provided.

" *Seventh.* Should any of the bequests or provisions in this my Will contained lapse according to law by reason of the death of any person or persons entitled to take under said Will, or for any other reason, without a proper direction herein as to how such interest or provision should pass, then and in that event, I order and direct that such interests or provisions shall pass into my residuary estate and become part thereof and be administered and distributed as provided in the sixth paragraph of this my Will."

The surrogate decided that the testatrix created three separate trusts of her residuary estate for the beneficiaries therein named, each of one-third thereof; that upon the death of the first of said beneficiaries each of the two surviving beneficiaries will be entitled to income equally on the principal for life; that upon the death of each of said two surviving beneficiaries the trust as to one-half of the principal will terminate and be payable to the remaindermen specifically named in the will or their issue, and the issue of the named nephews of decedent or their issue, who survive at the termination of each of the trust periods; and that if none survives intestacy will result. (125 Misc. 224.)

At the time of the execution of the testatrix's will and at her death the three named remaindermen, to wit, Fred C. Furcht, Beatrice E. Wurm and Dorothea Wurm, were and still are living. At that time, and at the time of the institution of this proceeding, decedent's nephew William Moeller had and now has one child, William Moeller, Jr. Since the decedent's death a child, Roberta Wurm, was born to the decedent's nephew Henry George Wurm, which is his only issue. Neither at the decedent's death nor at the present time has the decedent's nephew George Moeller any child or issue.

Counsel for appellant insists that the construction of the will made by the surrogate is contrary to the clearly expressed intention of the testatrix and violates well-established rules of construction in similar cases. It is pointed out that the testatrix does not direct the payment of the income from a one-third share to each of the three beneficiaries, but does direct the payment of one-third of the income from the whole fund to each of the three beneficiaries. Whatever this fund in its entirety earned, each beneficiary was to have one-third until, of course, one beneficiary died. When this happened, the testatrix made no division of the fund, but

provided by the 3d paragraph of her will that the net income from the fund should be paid equally to the beneficiaries living until the death of the second beneficiary. It is argued by appellant's counsel that this shows a clear intention on the part of the testatrix that the trust fund should be regarded as one trust at least until the death of the second beneficiary.

In *Leach* v. *Godwin* (198 N. Y. 35) the rule of construction in regard to separate trust funds is stated as follows: " In cases where a trust for the benefit of several persons is held in one fund it is necessary for the purpose of holding that they constitute separate and independent trusts that each part of the principal fund should be liberated from the trust fund upon the termination of the lives in being at the death of the testator for which the trust is held and also to find from within the will itself that such was the intention of the testator." (See, also, *Matter of Magnus*, 179 App. Div. 359.)

The special guardian contends that the trust provisions are valid and do not suspend the absolute ownership of the trust fund beyond the statutory period; that the trust ending at the death of the second beneficiary would be measured by the lives of the first two beneficiaries and the trust ending at the death of the third beneficiary would be measured by the lives of the first and third beneficiaries. He argues that the corpus of the trust fund is held by the trustees in two equal, separate, undivided shares, and, as to one of said shares, the trust terminates when the second life beneficiary dies, and, as to the other of said shares, the trust terminates on the death of the last life beneficiary, citing *Schermerhorn* v. *Cotting* (131 N. Y. 48) and *Wells* v. *Wells* (88 id. 323).

In *Schermerhorn* v. *Cotting* (*supra*) the testator gave the residue of his estate in trust as follows:

(1) " To pay over to my wife * * * one-third part and portion of the whole net income." And during the life of said wife to pay over another one-third part of the income to the son and daughter respectively.

(2) " Upon the death of my said wife, my said two children her surviving, to pay to my said daughter Katie T. Cotting, during her life-time, the full and equal moiety or one-half part and portion of the whole net income, rents and profits of said trust estate * * * and if my said son Jameson Cotting shall at such time have attained the age of twenty-five years to pay to him the remaining moiety or one-half part or portion of said net income, rents and profits."

(3) " Upon the death of my said daughter, Katie T. Cotting, she surviving my said wife, * * * then * * * the full

and equal moiety or one-half part of the whole of said trust estate, * * * shall pass to, vest in, and be paid over " to such persons as she wills it to, or in default of a will to her children. A somewhat varied provision is made for the son, but such variance is not material on the question under discussion.

Judge PECKHAM, writing for the Court of Appeals, held that, upon the death of the wife, the whole estate was to be divided into two independent trusts, one in favor of the son and one in favor of the daughter, and that the one of these trusts was measured by the life of the wife and son and the other by the life of the wife and daughter, and that the Statute against Perpetuities was not violated. It was pointed out, however, that, as the estate was bound *in solido* during the life of the wife and the independent trusts came into play upon her death, the life of the wife must be counted as one of the lives upon which the independent trusts must be limited. The court also held that the share of the original estate which would come to the son and daughter vested in them at the time of the mother's death, and this was given as a reason for the construction of the will as made by the Court of Appeals.

In the present case I can see no reason for holding that an independent trust arises until two of the life tenants are dead, and, if this was the plan of the testatrix, these two lives must be counted as the lives upon which the independent trust is limited. In addition to this, the estate does not vest absolutely in the life tenants. It goes to other people when the trust is terminated. I cannot see, therefore, how this case is very helpful to the respondents.

In *Wells* v. *Wells* (*supra*) there was also a trust for the wife, and, upon her death, her interest was to be divided amongst her children, and the provision was sustained on much the same ground as in the *Cotting* case.

In *Post* v. *Bruere* (127 App. Div. 250) the testator made a trust for the benefit of his wife for her life or widowhood, and, after her death or remarriage, the income was to be paid to two sons equally during their natural lives, and, upon the death of each son, one-half of the corpus was to be divided among certain persons named. Mr. Justice GAYNOR, writing for this court, held that there was no violation of the Statute against Perpetuities because the true construction of the will was that it was intended that there should be a distribution of one-half of the principal upon the death of each son, and, this being so, the absolute ownership of any part of the trust fund would be suspended only for the life of the widow and one son. In other words, this construction made two distinct trusts and each one was considered alone upon the question of illegal suspension. In this will, however, there was a specific

provision that upon the death of either of the sons, one-half of the trust fund was to be distributed among the children of said sons then living. Furthermore, in the beginning, one trust was provided for one person, the wife, while in the present will, one trust is provided for three persons, and, of course, in the Post will, there is no clause providing for a continuation of the trust for a third life upon the fund when divided.

Counsel for certain of the remaindermen seems to doubt the correctness of the surrogate's conclusion that the will created three trusts for these separate beneficiaries; but he thinks that the will may be held valid by construing it as holding the whole estate as one fund or trust, and, upon the death of the first beneficiary, a creation of two trusts of one-half of the estate each. The will, however, makes no division of the trust fund at the death of the first beneficiary. A division is only provided for when the second beneficiary dies. Counsel contends, however, that the whole estate vests at the death of the testatrix, one-half subject to the life estate of the first and second life tenants, and the other half subject to the life estate of the first and third life tenants. I confess that I am unable to see the force of this argument.

Counsel for the trustee maintains that the testator intended to divide the residuary estate into two parts, one part to be held until two of the three life tenants died and then to be distributed and the other part to be held likewise until two of the three beneficiaries died and then to be distributed. He argues that it is apparent that she intended to provide for two trusts because she provided for distribution of one part in the 4th paragraph of her will and the other part in the 6th paragraph of her will. This division, he states, was to take place at once upon the death of the testatrix. According to the construction he contends for, each of the three life tenants was at first to receive one-third of the income. When one of them died, one of the two remaining life tenants was to receive the income from one share and the other the income from the other share until the second life tenant died. Then the share from which the second life tenant had been receiving income was to be distributed, but the share from which the third and last surviving life tenant was to receive income is still intact. It was not affected by the death of the second life tenant, that is, the death of the second life tenant did not increase or diminish the income received by the third life tenant, nor was it in any way affected by the distribution of the other share, and, consequently, counsel insists, the share of the third life tenant was measured only by the life of the first life tenant, and, consequently, there has been no illegal suspension.

My own view is in accord with the claim of the appellant that the testatrix intended to provide one trust fund for the benefit of three beneficiaries and that there is no indication that she intended to provide separate trusts until the death of the second beneficiary. It seems to me that the provision for holding one-half of the fund after the death of the second beneficiary until the death of the third beneficiary clearly creates a suspension beyond two lives in being at the death of the testatrix.

There remains the question as to whether the release of one-half the residuary estate upon the death of the second beneficiary saves this part from the condemnation of the statute. (See Real Prop. Law, § 42; Pers. Prop. Law, § 11.) Counsel for the appellant insists that the invalidity permeates the disposition of the entire residuary estate; that one trust was created, and, if part of the fund is to be held for three lives, it renders invalid the entire trust. It is insisted that this is not a case of eliminating an unlawful trust from a will and giving effect to those trusts that are lawful, citing *Bailey* v. *Buffalo L., T. & S. D. Co.* (213 N. Y. 525), where the court said: " The rule is well established that when some of the trusts in a will are legal and some illegal, if they are connected together so as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries or some of them, then all of the trust provisions must be construed together and all must be held illegal. (*Manice* v. *Manice,* 43 N. Y. 303; *Knox* v. *Jones,* 47 N. Y. 389; *Van Schuyver* v. *Mulford,* 59 N. Y. 426; *Kennedy* v. *Hoy,* 105 N. Y. 135; *Tilden* v. *Green,* 130 N. Y. 29.) " (See, also, *Brown* v. *Quintard,* 177 N. Y. 75; *Matter of Butterfield,* 133 id. 473; *Rice* v. *Barrett,* 102 id. 161; *LaFarge* v. *Brown,* 31 App. Div. 542.)

Counsel for respondent, trustee, points out that it is the policy of the courts, when possible, to uphold all valid provisions in a will; that the testatrix in the present case clearly intended that certain people should benefit by the income from her estate during the lives of two beneficiaries in any event; that at the death of the second beneficiary, there was a different disposition made of the trust funds, it being then divided into two parts and that the valid part can be thus easily distinguished and separated from the part that is held invalid, if any part should be so held, citing *Savage* v. *Burnham* (17 N. Y. 561); *Matter of Allen* (111 Misc. 93; affd., 202 App. Div. 810; mod., 236 N. Y. 503); *Matter of Beale* (213 App. Div. 13); *Matter of Silsby* (229 N. Y. 396).

In the case last cited, where the situation was somewhat

similar to that presented here, a separation apparently was upheld on the ground that it could be done without defeating the general intent of the testator to the extent of the valid parts of the trust. My own judgment is that it is not necessary in the present case to condemn the trust as a whole, but that it may be upheld as to the part distributed at the death of the second life tenant.

Counsel for the trustee also contends that if it be held that the trust for the benefit of the third life tenant is invalid, the 5th paragraph of the will which provides for the payment of the income on one-half of the residuary estate during the life of the third beneficiary should be eliminated from the will, and that the direction embodied in the 7th paragraph of the will for the distribution of any portion of the estate which might lapse or fail to take effect for failure of proper direction in the will as to how such interest should pass should be enforced and this portion of the estate should, therefore, go to the remaindermen, and so intestacy be avoided.

It is asserted by the appellant, however, that this contention is contrary to the rule laid down by the Court of Appeals in *Wright* v. *Wright* (225 N. Y. 329). In that case Chief Judge Hiscock, writing the opinion of the court, said (p. 340): " It is the familiar rule that a general residuary clause will include and be applicable to lapsed legacies. This rule also governs devises of real estate which fail. So anxious is the law to avoid intestacy that where the language of a residuary clause is ambiguous the courts will give it a broad rather than a restricted interpretation so as to include such legacies. (*Lamb* v. *Lamb*, 131 N. Y. 227, 234.)

" While, however, this is the general rule in respect of residuary clauses it is not the rule in respect of a residuary clause where the legacy which has failed and lapsed was intended to be a disposition of part of the residue. In such a case, on failure of the intended legacy of part of the residuum, the part as to which disposition has failed will go as in case of intestacy and the residuum passing under the residuary clause will not be augmented by a ' residue of a residue.' The reason for this distinction in most cases is not very apparent, satisfactory or convincing. The one most often given is based on the assumption that it could not have been the intent of the testator in disposing of his residuary estate that a bequest of the residue thereof should be augmented by the lapse of other bequests from such residuum."

In that case, however, there was no direction contained in the will then under consideration similar to the provisions of paragraph 7 of the will in question in the case at bar. It will be observed that the Court of Appeals in the case last cited did not seem to be very favorably disposed to the rule laid down, but felt constrained

to follow it, saying (pp. 340, 341): " While this course of reasoning has some apparent force where the residuum consists of a definite sum or specific property and where it might be assumed that the testator by the residuary clause intended to make a definite bequest, it is difficult to appreciate the force of the reason in such a case as the present one where the residuum to be disposed of consists of a certain portion of an estate of unknown value and where there seems to be no good ground for withholding application to the residuary clause and lapsed legacy of the principles ordinarily covering such a situation. However, without attempting to justify this distinction as logical or reasonable in most cases we nevertheless are forced to realize that as the result of inheritance and frequent repetition the rule has become too firmly established to be disregarded," citing numerous cases.

An examination of the cases cited by the Court of Appeals in the *Wright* case shows that in none of them was there any such provision as that contained in paragraph 7 of the will in the case at bar. If there were nothing in the will in question concerning the disposition of lapsed or void legacies or devises, the rule laid down in *Wright* v. *Wright* (*supra*) as to the assumed intention of the testatrix, with regard to lapsed or void portions of the residuary itself would, of course, be applicable. But this rule is simply a rule of construction which presumes an intent where none other can be gathered by the express provisions of the will. In my opinion, this rule of construction must yield where the will in express terms shows a contrary intent by the testatrix. This, I think, is clearly shown by the 7th paragraph of the will, which is very broad and comprehensive and provides precisely what disposition shall be made of any such bequest, not by the general provisions of the residuary clause, but by distribution as provided in the 6th paragraph of the will. This 6th paragraph in turn provides for the distribution of the remainder to the persons named in paragraph 4 of the will, which are the remaindermen.

In my opinion, therefore, the one-half portion of the residuary estate, the attempted disposition of which is void because unlawfully suspending the power of alienation, will pass in accordance with the provisions of paragraph 7 of the will to the persons named in the 4th paragraph thereof.

The only other question which needs to be noticed is the objection to the allowances of $750 and $500 to counsel representing remaindermen and the trustee. Of course, under section 278 of the Surrogate's Court Act, these allowances could not be given. According to the provisions of this section, $70 is allowed as the limit where there has been a contest and $25 where there has been no contest.

It is contended, however, that the allowances are justified under section 231-a of the Surrogate's Court Act. This section was added by an amendment which took effect September 1, 1923. It is as follows:

" § 231-a. Compensation of attorneys. At any time during the administration of an estate, and irrespective of the pendency of a particular proceeding, the surrogate shall have power to hear an application for and to fix and determine the compensation of an attorney for services rendered to an estate or to its representative, or to a devisee, legatee, distributee or any person interested therein; or in proceedings to compel the delivery of papers or funds in the hands of such attorney.

" Such proceeding shall be instituted by petition of a representative of the estate, or a person interested, or an attorney who has rendered services. Notice of the application shall be given in such manner as the surrogate may direct. The surrogate may direct payment therefor from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein." (Added by Laws of 1923, chap. 526, in effect Sept. 1, 1923.)

I think that the surrogate had the right to grant allowances under this section in a proceeding of this kind. The trouble about the present situation is that no formal petition for allowances was ever presented and the record does not show that any notice of such an application was given to the appellant's counsel, although it appears that all the parties were before the surrogate. I think it is clear that the allowances granted to the trustee and the attorney for the remaindermen must be disallowed upon this appeal.

The decree of the Surrogate's Court of Westchester county should be modified in accordance herewith, and as so modified affirmed, with costs to each attorney filing briefs in this court, payable out of the estate.

KELLY, P. J., RICH, JAYCOX and KELBY, JJ., concur.

Decree of the Surrogate's Court of Westchester county modified in accordance with opinion, and as so modified affirmed, with costs to each attorney filing briefs in this court, payable out of the estate.