In the Matter of the Estate of NATHANIEL W. NORTON, Deceased.*

Surrogate's Court, Erie County, January 12, 1931.

*Lansdowne & Lansdowne*, for Herbert F. J. Norton, one of the executors of the estate of Nathaniel W. Norton.

*Dudley, Stowe & Sawyer*, for Martha Norton Spencer, residuary legatee, and Mary Louise Norton, widow, residuary legatee and executrix.

* See *post*, p. 715.

HART, S. The decedent, Nathaniel W. Norton, was a practicing lawyer in the city of Buffalo for many years, associated with his brothers, Rosewell and Herbert Norton, under the firm name of Norton Brothers, and after Nathaniel's death the brothers continued the practice under the same name. Nathaniel designated his widow, Mary Louise Norton, and his brother Herbert as the executors of his will, which was probated in September, 1920.

On June 8, 1928, Mr. Dudley, attorney for Martha Norton Spencer, decedent's only child and one of his two residuary legatees, had a consultation with Herbert Norton, requesting that the executors file an account and settlement of the estate. The following day Desbecker, Fisk & Newcomb filed in this court a notice of retainer as attorneys for Herbert Norton, as executor of this estate, inclosing a copy to Mrs. Spencer's counsel in a letter in which they announced their intention to prepare and file the account as requested. Dudley, Stowe & Sawyer, on July 17, 1928, wrote a letter to Herbert Norton, with copy to Desbecker, Fisk & Newcomb, in which they stated that Mrs. Spencer felt that very large sums had been paid to Norton Brothers for legal services; that she might wish to question the propriety of the large disbursements made by the executors for legal services, and that she would oppose the payment or allowance of any sum to Desbecker, Fisk & Newcomb, or any other attorneys who should be retained by Herbert Norton individually to represent him as one of the executors. In this letter Herbert Norton was requested to attend to the accounting upon his return in September from his vacation.

No account was filed, and after waiting five months Mrs. Spencer filed a petition on February 6, 1929, requiring the executors to account. Upon March 11, 1929, Norton Brothers, as attorneys, filed a petition and account in the voluntary final accounting of Herbert Norton as one of the executors of this estate, and the two proceedings were consolidated. On April 1, 1929, Lansdowne & Lansdowne were substituted as attorneys for Herbert Norton, and on that day filed a notice of appearance as attorneys for Norton Brothers and for Herbert Norton as one of the executors. After they appeared in the proceeding Mrs. Spencer's counsel advised them of the letter which had been sent to Herbert Norton and Desbecker, Fisk & Newcomb, and notified them that Mrs. Spencer would also oppose any allowance to them.

Objections were filed in behalf of Mrs. Spencer to the amount of the executor's disbursements of $16,200 to his own law firm and to his claim that an additional $2,300 was due his firm for legal services. The questions raised were submitted to Parton

Swift, referee, who found that the reasonable value of Norton Brothers' services was $8,800 instead of $18,500, a reduction of $9,700. This report was confirmed in this court, the report and decree of confirmation were affirmed in the Appellate Division, and both the Appellate Division and the Court of Appeals denied successive motions of Norton Brothers and Herbert Norton for leave to appeal to the Court of Appeals. Lansdowne & Lansdowne, as attorneys for Norton Brothers and Herbert Norton, as executor, tried the case before the referee, opposed confirmation in this court, prepared and argued the appeal before the Appellate Division and made the two motions for leave to appeal to the Court of Appeals.

This proceeding is under section 231-a of the Surrogate's Court Act. The petition sets out in detail the services rendered by Lansdowne & Lansdowne, alleging that the estate of Nathaniel W. Norton is indebted to them in the sum of at least $5,000, praying the court to fix and determine the amount of their compensation and direct payment to them out of the funds of the estate.

The entire contest and objection to this executor's account was based upon the charges of his own law firm for legal services, which contest with incidental expenses has cost the estate a considerable amount. The claim of this accounting executor was in hostility to the interests of the estate. If he and these petitioners had been successful, the estate would have been depleted $9,700 and the executor and his law firm would have been enriched to that extent.

The law governing costs and allowances in Surrogate's Court has always been restricted to successful contestants or for services rendered for the benefit of the estate, with limitations as to amounts. This estate is still in the hands of the executors with only partial distribution, and the residuary legatees are seeking final distribution. Following the established precedents laid down for the inception of probate courts, I am unable to find any law or reason which would here justify any allowance to the petitioners out of the funds of this estate.

Decree may be entered in accordance with this memorandum.