In the Matter of the Estate of MARY C. O'BRIEN, Deceased.

Surrogate's Court, Monroe County, February 23, 1933.

*E. A. Marsh*, in person, for the contestant.

*C. W. Murphy*, in person, for the proponents.

*T. Leo McCarthy*, special guardian, for the legatees.

FEELY, S.   After seven days of trial before a jury, the contestant succeeded in regaining her quarter or equal share in the $35,000

estate of her deceased mother by the jury finding testatrix incompetent at the date of the will that excluded her, leaving all the estate to the three other children. She was at once confronted with a slightly less unfavorable will made six years before the invalidated one. This threatens to minimize her present success.

Contestant's costs were taxed under section 278 of the Surrogate's Court Act on a basis of sixty days, at $1,995. Her counsel now moves, under section 231-a of the Surrogate's Court Act, to have all now known parties in interest show cause why he should not also have, in addition to his client's taxed costs, an extra allowance of $1,500 out of the estate, as costs. Proponents, on a like time basis, taxed costs at $1,706; and their counsel now moves for an extra allowance also, presumably for as much as his opponent is asking; and the special guardian submits a bill of costs of $770. These demands make a possible total of $7,770 to be paid out of this estate as costs. The proponents, owning three-quarters of the estate, at this stage of the litigation, object only to the extra allowance asked for by the opposing counsel. The contestant objects to proponents, or their counsel, getting anything, on either score. Underlying each motion is the question: Can the surrogate grant any " extra " allowance in this case?

No doubt the surrogate's limited jurisdiction to grant either taxable costs, or any allowance whatever as costs, is wholly dependent on some express statutory provision (*Matter of Welling*, 51 App. Div. 355, 359); and is embodied in article 15 of the Surrogate's Court Act on " Costs and Fees; Commissions and Compensation of Executors " and others. The opening section (275) of this article 15 declares generally that the surrogate's power, both in the matter of costs and in that of allowances as costs, is to be exercised " *solely* in accordance with the following sections; " and they deal specially with both subjects. They also deal with the source and manner of payment, whether out of the fund or estate, or some part of it, or personally. (§ 275.)

In this exclusive article 15, special provision, and for that reason presumably complete provision, is made in section 278 for the case at bar, both for the nominated executors as unsuccessful proponents, and for the successful contestant. The latter, in probate, may be awarded costs only under the ordinary scale and per diem that is applicable to " any other party [than petitioner] who has succeeded in a contest." (§ 278.) No statute specifically provides that he may be given an indefinite allowance, in lieu thereof, or an " extra " allowance in addition thereto. Obviously, there must be the clearest possible statutory warrant before the money of A can be taken to pay B for the legal services B rendered C, at the

latter's request and in hostility to A. That sort of thing cannot rest merely in implication and construction. Concededly, the relation of attorney and client does not exist between the moving counsel in each motion and his respective opponents. For this reason, in addition to the purposely limited recompense, or " damages for suing " that go to the winner under the name of " taxable costs "— intentionally restricted in amount to less than adaquacy, on well-known grounds of public policy — any further such recompense to the prevailing counsel out of the pockets of his opponents — which it is possible to allow only, *in invitum*, " as costs "— has been especially limited and restricted by the body of rules on the subject of " extra allowance." In the limited jurisdiction of the Surrogate's Court, embodied mainly in the Surrogate's Court Act, there is no provision for " extra allowance " by just that name; but, in substance, only three cases of extra or indefinite allowance are provided for; and all of them in said exclusive article 15. This present case is not among them. The first is the " additional allowance " in settling an account (§ 279) of not over twenty-five dollars per diem, on top of any taxed costs; because accounting is the difficult kind of matter that might call for an " extra allowance " in Supreme Court practice. So, a surrogate, on an accounting, cannot make an allowance except under these sections 278 and 279 (*Matter of Eddy*, 207 App. Div. 162; *Matter of Billings*, 141 Misc. 84); but not under section 231-a (*Matter of Vorndran*, 132 Misc. 611; *Matter of Chaves*, 143 id. 872), and see *Matter of Hartmann* (133 id. 739).

The second such " difficult and extraordinary " case in surrogate practice is the proceeding to construe a last will; but this is still a case where statutory authority was indispensable to making an extra allowance. It was so held in *Walter* v. *Walter* (60 Misc. 570), which was decided before section 278 was accordingly amended in 1925. Hence Surrogate HARRINGTON correctly ruled in *Matter of Billings* (141 Misc. 84) that as construing a will results in a common benefit to all concerned, the addition of this class of case to section 278, in 1925, authorized the court to make indefinite allowances, as therein prescribed, to the contributing attorneys for the various parties, payable out of the estate; and he adds: " It should, therefore, be apparent that this amendment to section 278 of the Surrogate's Court Act * * * was not intended to be construed in the same manner as section 231-a of the Surrogate's Court Act."

Section 278, as amended, is the exclusive provision as to any allowance whatever in will construction cases. It is a special provision based on the unusual and complicated nature of this

class of cases. Before the revision of 1914, construing any writing was, in Supreme Court, the kind of difficult matter in which an " extra allowance " might be applied for there (*Carley* v. *Harper*, 219 N. Y. 295; *Allen* v. *Stevens*, 161 id. 122); but after the revision had made the Surrogate's Court the ordinary forum for issues of that kind in will cases, the Supreme Court held it would no longer grant an " extra " allowance in an action before it to construe a will. (*Germann* v. *Reynolds* [*Matter of Schaffner*], 131 Misc. 559.) All this, however, seems to have been overlooked in construing the last will of Buttner (*Matter of Buttner*, 215 App. Div. 62), decided in 1925, after the amendment, holding the new section authorized an allowance as costs to the remainderman and the trustee. As to the latter, there is no doubt, because between the trustee and his counsel the relation of attorney and client existed; but as to the remainderman the decision is questionable.

The third and last case for allowance, not limited to the scale and per diem, is the disposition in Surrogate's Court of real property, as an incident of accounting and distribution, with matters of title involved, where section 281 authorizes the surrogate to make an indefinite allowance. It would be improper to add the term " extra " to the allowance to the special guardian (§ 280); nor can this term " extra " be properly applied to the special case of a representative and his own counsel, wherein the declaratory section 279-a has, since 1928, permitted the representative to pay, as he theretofore did, his own counsel for legal services to him as such, a reasonable sum " in excess of costs and allowances as costs." All this section did was to expressly legalize a form of customary disbursement, rather than provide for an " extra " allowance as costs; because that would be *in invitum*, whereas the custom and the section postulate the relation of attorney and client.

Notwithstanding no such provision is made for an " extra " allowance as costs in probate, each of the instant motions is for an " extra allowance," properly so called, in contested probate, although this is otherwise expressly provided for in section 278; and each motion is expressly based on section 231-a which is not found in this exclusive article 15. This section 231-a merely authorizes the surrogate, at any time, to fix and determine the value of an attorney's services to his own client in surrogate matters, and provide for the incidental lien. It has nothing whatever to do with non-contractual, compulsory exactions by way of costs and allowances as costs. In fact, no where in this section 231-a appears the word " extra " or its equivalent; nor does the word " costs," or the word " allowance," in any form appear therein; nor is there any reference whatever made in section 231-a to the elaborate

and exclusive provisions on costs and allowances as costs in said article 15. Still some color for so basing the motions derives from a few cursory rulings that seem to state most briefly that an " extra allowance," using that phrase, may be had under section 231-a. In the confusion resulting from this new enactment some did not go as far as to use the word " extra," but stopped after interpolating the word " allowance," with this qualification that " the moving party's success must have been such as to enure to the common benefit of all parties in interest in the estate or fund; " although there is not the slightest suggestion of that in the new section. (See *Matter of Norton*, 139 Misc. 487; *Matter of Vorndran*, 132 id. 611, 613.) But in the *Vorndran* case last cited the surrogate declined to decide whether he lacked power to make a cost allowance under section 231-a. Some of this confusion arises out of the failure to recall that section 278 of the Surrogate's Court Act provides exclusively that the surrogate may make an allowance for services that were " of substantial benefit to him, or to the estate or fund," according to the scale and per diem, outside the three cases of extra or indefinite allowance described above. (*Matter of Chaves*, 143 Misc. 872; *Matter of Vorndran, supra*.) For this reason the allowance should have been made in *Matter of Foley* (126 Misc. 672) as it was made, but not under section 231-a, which the opinion cites. Three months after the new section 231-a took effect, Surrogate FOLEY in *Matter of Parsons* (121 Misc. 747; affd., 208 App. Div. 769), pointed out " that it could not be used as a substitute for other orderly and specially prescribed proceedings." (Jessup-Redf. ¶ 156-a.) There he correctly held that in probate no allowance could be granted, either under section 278 or section 231-a, to an unsuccessful proponent who was not one of the class of persons specified in section 278, which is exclusive in the premises.

When this new section took effect in 1923, every one conversant with surrogate practice took it to be merely declaratory and confirmatory of the otherwise inherent or implied jurisdiction of the surrogate, in liquidating an estate, also to liquidate the obstructive, incidental disputes that might arise over it, or parts of it, as between attorney and client only (*Matter of Smith*, 111 App. Div. 23), notwithstanding the court of the surrogate is not the court of the enrollment of attorneys at law as officers of court. It was because those disputes hindered distribution and payment that this new section, authorizing the surrogate to pass upon the attorney's compensation and lien, was tacked onto the tail of article 12 as an addition to that article's general directions to a legal representative how to proceed with " Claims; Payment of Debts, Legacies " and

so forth. If this section had anything whatever to do with costs, it would have been put into article 15, on Costs. The section being merely declaratory, Surrogate WINGATE correctly said that as between an executrix, who was sole beneficiary, and her sometime attorney, his legal " services to the estate are distinctly within the cognizance of the [surrogate's] court, not by reason of section 231-a, but as a result of the powers given to the court under section 40 of the act." (*Matter of Anderson,* 136 Misc. 110.) The decisions had already clearly established the jurisdiction of the surrogate to fix, as between attorney and client only, the amount of the attorney's compensation in surrogate matters, without relegating the parties to another forum; and also to direct the manner of its payment where there was nothing to which his lien could attach. (Jessup-Redf. ¶ 156-a.)

Nothing in section 231-a suggests the limitations that public policy impresses on demands for " extra allowance " as costs, in that the case shall have been both difficult and extraordinary; or if ordinary, resulting substantially in common benefit to the fund or estate, and that in the latter event, no allowance should exceed the ordinary schedule. (Civ. Prac. Act, § 1477.) On the contrary, such particulars as are contained in this section 231-a reflect only the relation of attorney and client, *e. g.*, that "irrespective of the pendency of a particular proceeding," the surrogate may " fix and determine the compensation of an attorney," and " compel the delivery of papers or funds in the hands of such attorney," that is, to provide for his lien. To " fix and determine," and " direct payment therefor," are words that differ much from " allowing as costs." The word " compensation " is derived from old section 66 of the Code of Civil Procedure (now section 474 of the Judiciary Law) and is associated with the relation of attorney and client; and likewise, the lien (now in section 475 of the Judiciary Law) has only a contractual extension to costs, and then only in some cases.

It is noteworthy here that the relation of attorney and client underlies the great majority of cases which cite and apply this section 231-a. (*Matter of Rosenberg,* 218 App. Div. 845; *Matter of Buttner,* 215 id. 62; *Matter of Starbuck,* 225 id. 689; *Matter of Potts,* 213 id. 59; *Matter of Fay,* 224 id. 675; *Matter of Smith,* 214 id. 622; *Matter of Lake,* 219 id. 530, App. Book, 8537; *Matter of Norton,* 139 Misc. 487; *Matter of Kennedy,* 133 id. 904; *Matter of Anderson,* 136 id. 110; *Matter of Kaplan,* 139 id. 414; *Matter of Van Volkenburgh,* Id. 437.)

On the other hand, among the cases cited to the court herein only four appear to lend some support to the attempts that have been made to divert this section 231-a, by construction, so as to

justify a surrogate in granting, *ad libitum*, any allowance, or any extra allowance, as costs, in any case whatever, without regard to any other statute on the subject. The first is *Matter of Foley* (*supra*), where the ruling was right but the reasoning wrong, in that section 231-a was cited as authority therefor. Then there is *Matter of Hartman* (133 Misc. 739), where, in construing a will, the widow elected to take under a separation agreement, instead of under the will. It was there held that she had not " succeeded in a contest " under the provision of section 278 to that effect; but rather under the later provision of the same section as to construction cases; and as a question of construction was presented, a bill of costs might be submitted, under the special provision of section 278 aforesaid; and so far the ruling is correct. But trouble arises out of the ambiguity of the further ruling that inasmuch as no application had been made under section 231-a, no allowance out of the estate could be made. In so far as it was deliberately intended, if at all, to imply that had such application been made, section 231-a would have enabled the surrogate to act, in the face of the special and exclusive provision for just that case in section 278, it is erroneous, for the reasons stated above.

Then there is *Matter of McKenna* (226 App. Div. 75, App. Book, 9322), where this point was not properly before the court of review. There an administrator accounted. Seven children of deceased appeared by one firm of attorneys; and three other children by another firm. The seven raised the question of the validity of an assignment of their shares in the estate; and the surrogate held it void. He then allowed the counsel for the seven a lump sum of $1,000 and disbursements, payable out of the estate. The administratrix and the two others argued on appeal that the allowance out of the estate was improper, and excessive in any event; and resulted in no advantage at all to the estate; and that the assignors had only retrieved their own property. Respondents argued the seven had prevented a diversion of nine-tenths of the estate; and especially that there had been no point made to the effect that the procedure was irregular, or that the surrogate lacked power; and they asked the appellate court to allow a more formal application to the court below to fix their compensation under section 231-a, with costs against the estate under section 278. The remittitur modified the surrogate's decree by striking out the provision allowing a lump sum to counsel for contestants, for that was undoubtedly improper. It further ordered the surrogate to proceed under section 231-a and section 278 to a determination of the allowances and costs. Whether in so doing the question was raised and a proper exception taken does not appear.

Lastly, there is *Matter of Lounsberry* (226 App. Div. 291, App. Book, 2630), where, upon the accounting executor's refusal to retrieve from a legatee several certificates of deposit, withheld under claim of *inter vivos* gift, two of the other legatees undertook that task, and succeeded in surcharging the accountant in the sum of $3,132.72, upon a stipulation that the judge acting as surrogate might render judgment on the issue so raised. The result was that all the legatees shared in the recovery of this sum. After having taxed costs under section 278 at $200, the attorney for the two legatees moved under section 231-a for an allowance on top of his taxed costs. Judge E. C. Smith correctly expressed the view prevailing among surrogates when he then ruled that " the court had no jurisdiction to make such allowances as [the attorney for the two legatees] was not retained by the executor on the accounting," that is to say, the basic relation of attorney and client, requisite for the only proper application of that section 231-a, did not exist between him and the estate. The Appellate Division thought one, at least, of those certificates should not have been taken from the donee; and that the surrogate had power to make the extra allowance of $400, citing the section, and *Matter of Buttner (supra)*, without comment, and apparently without recalling that this *Buttner* case was a construction case specially and exclusively provided for in section 278; and involved, to some extent, the relation of attorney and client.

The most that can be said of the *Lounsberry* case is that the successful parties had done something for the common good and were entitled to costs. They could be recompensed in costs, only under the specific and exclusive provisions of section 278, for a party " who has succeeded in a contest." But for all that, the estate·could not properly be said to have become the client of their attorneys.

Finally, no cases have been found by any one herein which squarely hold a successful contestant in probate either can, or cannot, get under section 231-a an " extra allowance " on top of the special and exclusive provision in section 278 for the recompense as costs that may be awarded to a successful contestant in probate.

Moreover, resort to the general practice of the Supreme Court is also without any justification. If one turn from section 231-a of the Surrogate's Court Act on account of its inadequacy as a basis for an extra allowance as costs, quite as much doubt will be found to beset the theory that through section 316 of the Surrogate's Court Act a surrogate can avail himself of section 1513 of the Civil Practice Act to make an extra allowance as costs, of not to exceed five per cent of the value of the subject-matter involved in a " diffi-

cult and extraordinary " case; and this doubt rests on several reasons. First, that contested probate is not such case. The statute cited requires a case to present both features, under a rigid construction of that phrase. (*Swan* v. *Stiles*, 94 App. Div. 117.) The typical case of contested probate is rather a diffuse one, on a simple everyday issue; usually, just another family quarrel over fireside matters, within the knowledge or reach of all. The second obstacle lies in the condition prescribed in section 316, that it applies " except where a contrary intent is expressed in, or plainly implied from the context of " the Surrogate's Court Act. It has already been shown that article 15 of the Surrogate's Court Act provides, in substance, for only three cases wherein an indefinite or an extra allowance may be made, the present case not falling in that classification; and it has also been shown that those provisions are expressly exclusive as to all such costs and allowances as costs, and do not permit anything more than ordinary taxable costs to be allowed to a successful contestant in probate, whose case is expressly limited to the scale and per diem in section 278.

In the face of such doubts, Surrogate SCHULZ, cautioning the courts to " use great care," adds: " It seems quite apparent that if many parties appear in such a matter, which is not unusual, and the fees of the attorney for each were charged against the estate generally, it might be seriously depleted thereby." (*Matter of Vorndran,* 132 Misc. 611.) The seven days' contest of this later will in this $35,000 estate results in demands that the surrogate allow as costs, out of the estate, the gross sum of possibly $7,770. If the moving counsel are correct in their respective claims that section 231-a should be construed to authorize such allowances as costs, then the surrogate's power in the premises is absolutely unconditional and unlimited; and thus we will have the unique feature in the law of costs of a sweeping power to exact costs that rests on a doubtful construction only. If these motions were now to be decided as a matter of first impression, free from the embarrassment of apparently contrary rulings in the higher court, the foregoing considerations would move any one familiar with probate practice to hold that section 231-a was never intended, nor so framed as to confer unlimited power on a surrogate to grant as costs, out of the estate, any allowance whatever, whether extra or ordinary, either on top of or in lieu of taxable costs, in contested probate, either to an unsuccessful proponent executor, or to a successful contestant, or to an unsuccessful party litigating as special guardian.

If, however, the *Lounsberry Case* (*supra*) must be accepted as establishing, by construction, the rule to be in this department that the surrogate has power under section 231-a to grant extra allow-

ances in such a case, then there is every reason to proceed with caution, and reading strictly, to rule that no such similar case is now at bar. And if the power exist, then there are the other decisions whereby " benefit to the estate " has also been interpolated into this section 231-a as a decisive factor. Under that test, this contestant is the only one who benefits temporarily by this verdict, at a corresponding loss on the part of the other three children. The estate or fund itself has not been increased, nor diminished thereby. Three-quarters of the $1,995 in taxable costs comes out of the defeated parties; and this sum will customarily go to her counsel; and if he be awarded also the extra allowance asked, his client will have paid individually only one quarter of her own legal expenses. The contest cannot be said to have been beneficial to the " estate," in the sense that each and all of the parties received a common benefit from the verdict. On his own behalf, counsel for contestant seems to take the position that by the word " estate " is meant " regularity," or the resulting status of having the property put back on a legal basis after it had been apparently taken away under the color of the invalidated will. This appears to be an unusual and theoretical application of the term. An " estate has no judicial personality." (*Matter of Hammer*, 237 App. Div. 497.) It is merely the aggregate property in which all the parties in interest share, in the widest sense of the words " property " and " share."

Each of the motions for " extra allowance " under section 231-a is, therefore, denied.

Now as to the motion by proponents' counsel, the contestant objects both to the costs and to the extra allowance on the ground that his clients were unsuccessful, and not acting in good faith, but had unduly influenced the old lady. Failure does not stand in their way, as regards costs, under section 278; and as to good faith, it is not necessary to do more than to refer, as part hereof, to what was written by this court recently in *Matter of Roberts* (147 Misc. 63) as to this factor of good faith in a motion for costs. It suffices here to say that proponents produced more than a mere scintilla of evidence; and that, without disclosing the prior will, they had quite enough to go to the jury.

The ordinary costs, as taxed, not having been contested in either motion, are allowed, and may be included in the decree to be entered, wherein also allowance to the special guardian will be fixed for insertion upon submission of the decree.

Enter an order in each motion denying the same generally, without motion costs to either party as against the other.