## Second Department, July, 1934.

In the Matter of the Application of Charles L. Kingsley, Respondent, to Have the Surrogate of Westchester County Fix and Determine His Compensation as Attorney for Services Rendered to Georgena Mills Proctor, as a Trustee of and for the Benefit of the Estate of Frederick F. Proctor, Deceased.

City Bank Farmers Trust Company, as Executor, etc., of Frederick F. Proctor, Deceased, and Others, Appellants.

Decree of the Surrogate's Court of Westchester county affirmed, with costs to respondent, payable out of the estate. The petitioner is entitled to the amount allowed by the surrogate for services rendered to the estate pursuant to the thirty-third provision of the will. Lazansky, P. J., Young and Scudder, JJ., concur; Hagarty, J., with whom Davis, J., concurs, dissents and votes for reversal and dismissal of proceeding, with opinion.

Hagarty, J. (dissenting). This proceeding was instituted pursuant to the provisions of section 231-a of the Surrogate's Court Act to fix the compensation of the petitioner, attorney for Georgena Mills Proctor, the widow of the deceased and one of the trustees under his will. The City Bank Farmers Trust Company is the sole executor of the estate, and there are five trustees, including Mrs. Proctor. Petitioner was employed by Mrs. Proctor shortly prior to the death of her husband, which occurred on the 4th day of September, 1929, and continued in such employ until the 1st day of June, 1931, when his services were terminated. His arrangement with Mrs. Proctor was that he should act, not as the attorney for the executor or any of the other trustees, but as her attorney, on the basis of an annual retainer of $1,000 for all services rendered at her request, including the protection of her interests in the estate. This is a large estate, and its administration involved intricate and complex problems resulting from the emergencies of this period of economic depression. It is conceded that the petitioner rendered valuable services to the estate and it is not argued that the allowance of $7,500 involved in this proceeding is excessive. The claim of the appellants is that petitioner has now no claim against the estate. There would be little difficulty in sustaining this award were it not for the fact that the petitioner, subsequently to the cancellation of his retainer by Mrs. Proctor, compromised his claim and by instrument under seal released and discharged Mrs. Proctor, and, in my opinion the estate, from further liability to him. On the 3d day of June, 1931, and after the termination of the relationship established by the retainer, the petitioner forwarded a bill to the estate for services rendered for the benefit thereof from the 16th day of September, 1929, to the 18th day of March, 1931, for the sum of $12,000. Under date of June eighth of that year he wrote the attorneys for the estate: "I do not claim that I was retained as attorney or counsel by the Trust Company either in its capacity as executor or as trustee of the said estate. The services rendered, as set forth in the bill, were of benefit to the entire estate." Thereafter, the matter remained dormant until December of 1931, when petitioner

sent to Mrs. Proctor a further bill for the sum of $550, covering the *pro rata* part of his annual retainer of $1,000 to the first day of June of that year, on which day, as stated, his employment had terminated. In the meantime, Mrs. Proctor had retained other counsel, Mr. Samuel Saline, who undertook negotiations with the petitioner involving an adjustment of his claim. In September of 1932 an additional subject of controversy arose between the petitioner and Mrs. Proctor relating to certain National City Bank stock and the dividends thereon claimed by the latter, which were in petitioner's possession. Evidence of the details of the negotiations involving possible claims against the estate tending to establish the controversy between the parties, resulting in the final release which was actually executed by petitioner and delivered to Mrs. Proctor " individually and as trustee," was excluded by the surrogate. In any event, the matter culminated in the exchange of general releases between Mrs. Proctor and the petitioner. Under date of November 19, 1932, Saline wrote the petitioner: " I am handing you herewith today Mrs. F. F. Proctor's check to your order for $550, together with her general release in your favor. This will acknowledge receipt from you today of certificate No. F 218403 for 10 shares of the National City Bank Company stock made out in your name and indorsed by you in favor of Mrs. Proctor, certificate No. F 226861 for 10 shares of National City Bank Company stock in the name of Georgena M. Proctor, release from you to Mrs. Proctor, individually, and as trustee of the last will and testament of F. F. Proctor, deceased, and your check to the order of Mrs. Proctor for $57.50 representing the dividends on ten shares of stock standing in your name." The defense of the executor and trustees is the general release under seal, executed by the petitioner in favor of his client both individually and as a trustee of the estate, and they contend, as a matter of law, that the release discharged the attorney's claim for compensation against the estate and that, in any event, the surrogate erred in excluding evidence tending to show that the claim for which the allowance was made in this proceeding was the subject-matter of the compromise. Assuming that the surrogate properly excluded the evidence and testimony offered on behalf of the estate, it appears to me, nevertheless, that the release is a complete defense to this proceeding. The retainer contemplated services to Mrs. Proctor in her capacity as trustee in connection with the administration of the estate and for the protection of her interest in the estate, but the services so rendered in fact reflected beneficially upon the entire estate. The release runs to Mrs. Proctor individually and as a trustee under the last will and testament of Frederick F. Proctor, deceased, and releases her from all manner of claims " which against Georgena M. Proctor, individually and as Trustee, as aforesaid," petitioner ever had. The consideration for the release was the payment of the balance of his retainer earned under his yearly agreement with Mrs. Proctor, together with Mrs. Proctor's general release to him involving the National City Bank stock and the dividends thereon in his possession, which were returned to Mrs. Proctor. The learned surrogate in his opinion disposed of the release by holding that " The petitioner asserts no claim against the widow individually or as trustee. It is asserted against the estate." An estate, however, is not a legal personality or a legal entity separate and apart from its representatives. (*Whiting* v. *Hudson Trust Co.*, 234 N. Y. 394; *Matter of Hammer*, 237 App. Div. 497; *Matter of O'Brien*, 146 Misc. 555.) In the case first above cited it was written: " It is only a form of words when we speak

of him [the trustee] as the representative of an ' estate.' The ' estate ' had no separate existence. It was not a legal person. The only person was the trustee." So, also, a person in his capacity " as trustee " is an entirely distinct legal entity and personality from that person in his individual capacity. A claim against a person " individually " may not be enforced against him " as trustee." (*Austin* v. *Munro*, 47 N. Y. 360; *Brackett* v. *Ostrander*, 126 App. Div. 529, 537.) It must be assumed in this case that Mrs. Proctor had the power as trustee to bind the trust estate. (*Jessup* v. *Smith*, 223 N. Y. 203.) Necessarily it must follow that she also had the power to procure a discharge of that obligation. An attorney's claim for compensation from a trust estate is derivative only, under the statute, and represents but the trustee's right to indemnity or reimbursement. To put it a little differently, Mrs. Proctor might herself have paid Kingsley and then sought reimbursement from the estate. Formerly, when a trustee retained counsel, it was deemed a personal obligation and the attorney had no claim upon the estate. The obligation to pay was that of the client, but the client was entitled to reimbursement from the estate, assuming, of course, that the payment was properly made. (*O'Brien* v. *Jackson*, 167 N. Y. 31; *Matter of Gilman*, 251 id. 265; *Jessup* v. *Smith*, *supra*.) An exception to the general rule, however, is to be found in those cases where at the time of the retainer an express agreement was made that the trust estate and not the trustee individually should be held liable for the services. (*Jessup* v. *Smith*, *supra*.) In that case it was written: " A trustee who pays his own money for services beneficial to the trust, has a lien for reimbursement. But if he is unable or unwilling to incur liability himself the law does not leave him helpless. In such circumstances, he ' has the power, if other funds fail, to create a charge, equivalent to his own lien for reimbursement, in favor of another by whom the services are rendered.' " The rule requiring a trustee first to pay such expenses from his own personal funds and then upon his accounting ask the court to authorize him as trustee to reimburse himself for such payment, was abrogated by section 2692 of the Code of Civil Procedure, now section 222 of the Surrogate's Court Act, which authorizes a trustee to pay his attorney's compensation and other administration expenses from the trust estate direct. Thereafter, an attorney might himself initiate a proceeding in the Surrogate's Court against the representative of the estate. (*Matter of Rabell*, 175 App. Div. 345.) Whatever doubt subsequently may have arisen by reason of decisions subsequent to *Matter of Rabell* (*supra*) it was removed by the enactment of section 231-a of the Surrogate's Court Act (*supra*). Petitioner's reasoning recognizes the doctrine that an estate may have no legal entity, but concludes that " it is now a source from which legal services may be paid." True, but the estate must be bound to pay by its representative, who also has the power to procure its release. (*Jessup* v. *Smith*, *supra*.) The trustee here employed the petitioner-respondent, not as the attorney for the estate, but to represent her interests in the estate, and in so doing the petitioner rendered valuable services to the estate, but when he executed the instrument of release in the form described he released not only Mrs. Proctor, but the estate as well. In any event, on the present record, the decree should be reversed and a new trial granted, for the reason that the surrogate excluded evidence offered by the appellants tending to show that it was specifically provided and actually intended by the parties that all claims, including those against the estate for which this award was made,

should be released. Proof of the entire transaction, including all the negotiations leading up to the release, should have been received by the surrogate. The decree should be reversed and the proceedings dismissed, with costs.