In the Matter of the Petition of IDA ASHNER to Render and Settle Her Account as Executrix of SIGMUND ASHNER, Deceased.

IDA ASHNER, Individually and as Executrix, etc., of SIGMUND ASHNER, Deceased, Appellant; EMILY HALLE SUMMERFIELD and Others, Respondents.

Second Department, December 1, 1930.

*Simon Rosenzweig*, for the appellant.

*John M. Harlan* [*Henry J. Friendly* with him on the brief], for the respondents.

YOUNG, J. The respondents, claiming to be residuary legatees under the will of the decedent, caused an examination of the books and records of the decedent and his estate to be examined by certified public accountants. Their report, upon a preliminary examination, showed, it is alleged, that the books were in great disorder, and that the executrix had improperly omitted from her account and was withholding from the estate assets aggregating approximately $1,000,000.

The executrix claims to hold these properties in her own individual right under alleged transfers from the decedent in his lifetime, by purchase from the estate, or as residuary legatee under the will of her son Robert Ashner, by whom certain of this property was acquired either from or through the decedent in his lifetime or by purchase from the estate of the decedent of which Robert, until his death, was a coexecutor.

Alleging that neither the executrix nor Robert Ashner had any substantial property at the time of the decedent's death, other than the property alleged to have been acquired by them through the decedent, that a substantial amount of the funds in dispute had

been improperly used by the executrix and that there was danger of loss to the estate, the respondents applied to the surrogate for an order restraining the executrix, pending the accounting, from disposing of the property in question.

This motion was opposed by the executrix. She asserts ownership of the property in dispute and raised various technical objections. The learned surrogate granted the respondents' motion and made the order appealed from.

The only serious question upon this appeal is as to the power of the surrogate to issue the injunction order. The present Surrogate's Court Act has greatly increased the power of the surrogate. Thus, by section 40 of that act he is authorized " to administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." That section (as amended by chapter 439 of the Laws of 1921) further empowers the surrogate, " in addition to and without limitation or restriction on the foregoing powers," among other things, " to enforce * * * the payment or delivery, by executors, administrators, and testamentary trustees, of money or other property in their possession, belonging to the estate or fund." (See, also, Laws of 1924, chap. 100, amdg. said § 40.)

By section 20 of the same act the surrogate is given certain incidental powers and, among others, " with respect to any matter not expressly provided for in the foregoing subdivisions of this section to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court having by the common law jurisdiction of such matters, except as otherwise prescribed by statute; and to exercise such incidental powers as are necessary to carry into effect the powers expressly conferred."

In *Matter of Hearne* (171 N. Y. Supp. 984) it was held by Surrogate FOWLER in 1918 that the Surrogate's Court is not a court of general equitable jurisdiction and could not strike out the contest of the probate of a will or restrain contestant from further contesting on the ground of agreement not to so contest.

In *Matter of Raymond v. Davis* (248 N. Y. 67) it was held that liquidation of a partnership might be ordered by the surrogate as an incident to the allowance or rejection of a claim to an estate,

CARDOZO, Ch. J., saying: " Early decisions were made upon the basis of a different grant of power. They deny the competence of a surrogate to decree the winding up of the business of a partnership, though liquidation be a necessary preliminary to the determination of a controversy lawfully before him (*Thomson* v. *Thomson*, 1 Bradf. 24, 35; *Matter of Irvin*, 87 App. Div. 466, 470). We must hold them superseded by the provisions of the statute. An amendment in 1921 emphasizes the call for a liberal construction. Till then, the general grant of jurisdiction had at times been read as limited by specific grants of jurisdiction as to enumerated subjects (*Matter of Mondshain*, 186 App. Div. 528; *Matter of Holzworth*, 166 App. Div. 150; 215 N. Y. 700). The amendment gives notice that the powers that are specific shall hereafter be read as being ' in addition to and without limitation or restriction on ' the powers that are general (*Matter of Van Buren* v. *Est. of Decker*, 204 App. Div. 138; *Matter of Haigh*, 125 Misc. Rep. 365, 367, 368; cf. *Matter of Kenny*, 92 Misc. Rep. 330). ' Concentration of jurisdiction as to decedents' estates ' (per FOLEY, S., in *Matter of Haigh*, *supra*), is the purpose clearly revealed in the statutory scheme. ' The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy ' (per THOMAS, J., in *Matter of Coombs*, 185 App. Div. 312, 314). To remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked."

In *Matter of Gilman* (41 Hun, 561), decided in 1886, the surrogate compelled executors to deposit with a trust company of the United States bonds and notes belonging to the estate under their control, there to remain until the further order of the court, and it was held that this order was proper and within the power granted to the surrogate " to administer justice in all matters relating to the affairs of deceased persons," the court saying: " It is not uncommon that losses are sustained by the estates of deceased persons by a course of conduct like that adopted by these two executors, and it was the duty of the surrogate to guard against the probability, as well as the possibility, of such loss. And if more stringency was observed in this respect in the administration of the estates of deceased persons by the Surrogate's Court, less occasion would arise to complain of irrevocable losses by persons deprived of the benefit designed to be secured to them by the disposition of the property of their parents, relatives and other friends."

The case last cited was followed in the case of *Matter of O'Connor* (1 N. Y. Supp. 110) and an executor ordered to deposit securities with a trust company pending an intermediate accounting.

Thus it will be seen that, even before the revision of the practice in the Surrogate's Court, and before the amendment made in 1921, the Surrogate's Court possessed jurisdiction to require the deposit by the executors of securities and property of the estate with a trust company to preserve the estate from loss. In my opinion, it also had power to issue a restraining or injunction order to prevent similar loss to the estate. The order, however, will have to be modified so as to require security by respondents. While the surrogate has, as incidental to the general power concerning estates, the power to issue injunctions, that power can be no broader than the power of the Supreme Court, sitting in equity under the Civil Practice Act, and section 819 of that act requires such security. The respondents should not be permitted to obtain this relief and entirely escape the consequences if it be finally determined that their claim was false and unfounded. They should, therefore, be required to give the ordinary undertaking to secure the appellant from loss or damage which she may sustain in the event that it be determined that they were not entitled to the injunction, and the order should be modified accordingly and affirmed.

The order of the Surrogate's Court of Kings county should be modified by inserting therein a provision requiring the respondents to give an undertaking, in the sum to be fixed by the order to be entered hereon, to the effect that they will pay to the appellant such damages, not exceeding said sum, as she may sustain by reason of the injunction if the court finally decide that the respondents were not entitled thereto, and as so modified affirmed, with costs to the respondents, payable out of the estate.

LAZANSKY, P. J., RICH, HAGARTY and TOMPKINS, JJ., concur.

Order of the Surrogate's Court of Kings county modified by inserting therein a provision requiring the respondents to give an undertaking, in a sum to be fixed by the order to be entered hereon, to the effect that they will pay to the appellant such damages, not exceeding said sum, as she may sustain by reason of the injunction if the court finally decide that the respondents were not entitled thereto, and as so modified affirmed, with costs to the respondents payable out of the estate.

Settle order on notice.