In the Matter of the Adoption of JAMES P. MANZI, a Minor over the Age of Twelve Years, by EVELINA L. TIETJEN.

Surrogate's Court, Kings County May 28, 1935.

*William A. Blank*, for James Manzi Tietjen.

*Gross & Keck*, for the petitioner, Thomas Woodruff.

WINGATE, S. The present application, which seeks a direction that a copy of the stenographer's minutes of the trial up to the present time be furnished to the respondent at the expense of the estate, is typical of a considerable number of applications made to the court in recent months. Since the utter absence of any legal basis for such relief demonstrates a somewhat prevalent misconception on the part of a portion of the bar respecting the authority of the surrogate in the awarding of costs, so-called " allowances," and disbursements, it is believed that some observations respecting the general subject may be of utility.

The proceeding in which the incidental application is made was instituted by one Thomas Woodruff, with the object of vacating an order of confirmation of adoption made by this court on March 6, 1934, whereby one Evelina L. Tietjen adopted one James P. Manzi. It is alleged in the moving papers that the order was procured by fraud and misrepresentation, and pursuant to a conspiracy to obtain control of the property of the adoptive mother, who has since died. The only parties to the proceeding are the applicant, who would be an heir at law of the decedent were the adoption to be held void, the adopted son, who is now an adult, and the natural parents of the latter.

The issues duly came on for trial in this court in April of this year. After the hearing had occupied three full court days, and prior to its conclusion, the counsel for the respondents suddenly withdrew. An adjounrment was granted to enable them to secure new counsel, and his first move in this court is the present application.

. The purported authority upon which it is based, is section 30 of the Surrogate's Court Act, which authorizes the surrogate to order that the stenographer's fees for the record copy of the minutes of a proceeding in this court " be paid out of the estate to which the proceeding relates."

Without delving unduly into the purpose of this particular enactment, it will be sufficient demonstration of its present inapplicability to note that no estate is a party to the present proceeding, and that the authority given is merely for the charge of the cost of the copy which is to form a part of the records of the court, whereas that which the applicant here seeks is to receive and have some one else pay for a copy for his own use.

Since the enactment upon which reliance is placed is inapplicable to the situation, the question is presented as to whether any authority may be found elsewhere which warrants the granting of the desired relief. This opens up the entire question of costs and allowances in this court.

As was noted by the Court of Appeals in *Stevens* v. *Central Nat. Bank* (168 N. Y. 560, at p. 566): " Costs are certain allowances authorized by statute to reimburse the successful party for expenses incurred in prosecuting or defendang an action or special proceeding. They are in the nature of incidental damages allowed to indemnify a party against the expense of successfully asserting his rights in court. The theory upon which they are allowed to a plaintiff is that the default of the defendant made it necessary to sue him, and to a defendant, that the plaintiff sued him without cause. Thus the party to blame pays costs to the party without fault. * * * *Victus victori in expensis condemnanandus est.* While costs are frequently allowed to both parties, or to many parties, payable out of a fund, ' the general rule is that the successful party, although he may be denied costs, never pays them.' " (See, also, *Matter of Wolke*, 155 Misc. 235; *Matter of Sloat*, 143 id. 170, 172; *Matter cf Carney*, 153 id. 505, 506.)

It appears from the foregoing, which is a reasonably typical statement of the theory of costs, that their purpose is to indemnify a party for the *expenses* to which he has been subjected by reason of the litigation and this is undoubtedly the basic reason why they are payable to the party himself in the vastly preponderant number of litigations.

Since no right to costs existed at common law (*People ex rel. S. P. C. C.* v. *Gilmore*, 88 N. Y. 626, 629; *Tillotson* v. *Smith*, 12 N. Y. St. Repr. 331, 333, reported by memorandum only, 45 Hun, 593; *Hill* v. *Sheldon*, 55 id. 44), it follows that they may be awarded only pursuant to the provisions of some statute, and may be allowed only in those instances and to the extent that they are thus expressly authorized. (*Osborn* v. *Cardeza*, 208 N. Y. 131, 134; *People* v. *Three Barrels Full*, 236 id. 175, 177; *Scherl* v. *Flam*, 136 App. Div. 753, 755; *Friedman* v. *Borchardt*, 161 id. 672, 674.)

The only existing authority for costs (including disbursements) in the Surrogate's Court is found in article 15 of the Surrogate's Court Act, sections 275 to 287, inclusive, wherefore, the sole charter of the surrogate in this regard must be sought in the provisions there found and in judicial interpretations thereof.

Section 275 expressly provides that costs in this court " shall be awarded * * * *solely in accordance with the following sections, and* shall include all *disbursements* of the party to whom they are awarded, *which might be taxed in the supreme court.*" (Italics not in original.)

In accordance with the obvious meaning of the language of the statute, it has been held that

1. The surrogate possesses no power to award any costs other than those expressly specified in the statute (*Matter of Watson*, 241 App. Div. 842; affd., 264 N. Y. 697; *Matter of O'Brien*, 146 Misc. 555, 556; *Matter of Bush*, 106 id. 227, 228; *Matter of Reppucci*, 145 id. 671, 678), and that

2. He has no authority to allow disbursements other than those permissible in the Supreme Court (*Matter of Bender*, 86 Hun, 570, 571), except where the contrary is expressly provided by law.

The foregoing, in a broad way, covers the questions of the authority of the surrogate respecting costs, strictly speaking, and disbursements or expenses. There remains for examination the subject of so-called " allowances."

It was, in effect, determined in *Matter of Watson* (149 Misc. 235) that payments so designated could be placed on a basis different from the sums awarded litigants which are ordinarily denominated " costs." That an " allowance " is merely a sum awarded as " costs," applicable to a particular variety of proceeding, seems obvious from the language of section 279, which, while headed "Additional allowance in settling account," reads: " In addition to the sum specified in the last section, the surrogate may, in his discretion, *allow* " *as costs* certain additional sums. In any event, the reversal of the surrogate by the Appellate Division, and the unanimous affirmance of such reversal by the Court of Appeals, apparently demonstrates that a so-called " allowance " is on a basis no different from " costs," so designated, and that its payment is not permissible unless expressly authorized in some identified statute. This is well developed in Surrogate FEELY's lucid opinion in *Matter of O'Brien* (146 Misc. 555, at pp. 556-558).

Under the provisions of the Surrogate's Court Act, the question of whether or not any costs whatsoever shall be awarded is wholly subject to the judicial discretion of the surrogate, except that none may be allowed to an unsuccessful litigant except in three specified instances to be noted later.

Whereas, as hereinbefore indicated, there is no sound distinction to be drawn between " costs " and " allowances," a difference will be made in the use of the designations in the following analysis of the enactments now in force, items being classified as " costs " when they apply to all cases coming before the court, and the term " allowances " being employed to designate the sum which may be paid only to particular individuals or in specified instances.

There is no provision in the law permitting the payment of any sum as costs or allowances except upon the entry of an order or a decree, and in only a single instance is the surrogate authorized to direct the payment of any disbursement whatsoever except in con-

nection with the entry of a decree. This sole exception is found in the last sentence of the second paragraph of section 278, in which it is provided that " the surrogate may order a copy of the stenographer's minutes to be furnished to the contestant's counsel, and charge the expense thereof to the estate, if he shall be satisfied that the contest is made in good faith."

Adverting, therefore, to the two occasions upon which payments in the nature of reimbursement for expense of litigation can be awarded, we first encounter " orders."

Two provisions are made in this connection, viz.:

1. *Ordinary orders*, in which the same costs are allowable as in the Supreme Court (§ 277), which remits the inquiry to section 1505 of the Civil Practice Act and places the limit of possible allowance at ten - dollars.

2. *Orders on granting or refusing a new trial.* Here, twenty-five dollars may be allowed if the new trial is granted and fifteen dollars if it is denied. (§ 278.)

Decrees carry costs at different rates depending on whether or not the proceeding was contested.

1. If uncontested, twenty-five dollars is allowable. (§ 278.)

2. If there was a contest, seventy dollars, plus a per diem in certain cases which will be noted under " allowances," is permissible. (§ 278.)

Turning now to the question of " allowances," as the term has hereinbefore been defined, seven instances are contemplated by the provisions of the Surrogate's Court Act:

1. Where a contested trial, terminating in a decree, has necessarily occupied more than one day, the successful party may receive not exceeding twenty-five dollars for each additional day " necessarily occupied in the trial * * * and in preparing therefor." (§ 278.)

2. " Where a person named as executor in a will propounds the will for probate, such person so named as executor may, whether successful or not * * * be awarded costs and all necessary disbursements made by him and all expenses incurred in the attempt to sustain the will." (§ 278.) In *Matter of Reimers* (261 N. Y. 337, 341) the Court of Appeals held in effect that any executor named in any purported will came within this description.

3. In a decree after appeal, " an executor, administrator, guardian or trustee " may receive " such sum as the surrogate deems reasonable for his counsel fees and other expenses necessarily incurred on such appeal." (§ 278.)

4. In a construction proceeding, " any party " may be allowed " such sum as the surrogate deems reasonable for his counsel fees

and other expenses necessarily incurred in such a proceeding." (§ 278.)

5. Any fiduciary, upon the settlement of his account may receive " not exceeding twenty-five dollars for each day necessarily occupied in preparing his account for settlement and in drawing, entering and executing the decree." (§ 279.)

6. An executor or administrator disposing of real property under the provisions of the act must be allowed from the proceeds his commissions and expenses, " and such a further sum as the surrogate thinks reasonable, for the necessary services of his attorney and counsel therein." (§ 281.)

7. " A special guardian  *  *  *  shall receive a reasonable compensation for his services to be fixed by the surrogate." (§ 280.)

There remains for consideration merely the question of disbursements or particular items of expenses.

The only instances of direct provision for these items, contained in the Surrogate's Court Act, have already been noted under items 2, 3, 4 and 6 of " allowances." Suffice it to note at this time that the only situations in which these are permissible, other than in a construction proceeding, are to an actual executor, administrator, guardian or trustee or to an executor named in a will who endeavors to effectuate his document.

Under section 275 of the Surrogate's Court Act, the only other disbursements which are allowable are regulated by the same enactments which govern similar payments in the Supreme Court. These are found in section 1518 of the Civil Practice Act, and are thus enumerated:

" 1. The legal fees of witnesses and of referees and other officers.

" 2. The reasonable compensation of commissioners taking depositions.

" 3. The legal fees for publication where publication is directed pursuant to law.

" 4. The legal fees paid for a certified copy of a deposition, or other paper, recorded or filed in any public office, necessarily used or obtained for use on the trial.

" 5. Copies of opinions and charges of judges.

" 6. The reasonable expenses of printing the papers for a hearing, when required by a rule of the court.

" 7. Prospective charges for the expenses of entering and docketing the judgment.

" 8. The sheriff's fees for receiving and returning one execution thereon, including the search for property.

" 9. The expenses of searches made by title insurance, abstract or searching companies, which shall be taxable at rates not exceeding the cost of similar official searches.

" 9-a. The reasonable expense actually incurred in securing an undertaking to stay execution under a judgment or to stay the enforcement of a judgment in any other manner or the enforcement of a decree in equity subsequently reversed.

" 10. Such other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law."

Whereas the last quoted subdivision is somewhat vague in its terms, its scope has been greatly circumscribed by construction. Thus the following have been held not taxable: Fees of an accountant selected by a referee to examine books of a defendant (*International Fastener Co.* v. *Francis Mfg. Co.*, 204 App. Div. 526, 527; 206 id. 647; affd., 236 N. Y. 673); attorney's hotel bill and railroad fare incurred while attending taking of depositions (*Nettleton Co.* v. *Story*, 121 Misc. 258, 261); engineer's fees in condemnation proceedings (*Matter of Schmieder*, 130 Misc. 136, 140); cost of examination by X-ray apparatus (*Kamsler* v. *Richter*, 224 App. Div. 709). It would accordingly seem to be a safe assumption that the only items coming within the purview of this subdivision are the usual matters included in the familiar forms of bills of costs, such as service of process, affidavits, postage, etc.

It may, therefore, be said by way of general summary that

1. The surrogate possesses no power to allow any party any sum by way of costs, allowances or disbursements save on an order or decree in a regular proceeding in the court except

(a) To allow contestants on a probate a copy of the minutes, or

(b) To award compensation to a special guardian.

2. He may not allow costs, allowances or disbursements to one who is not a successful party except

(a) On denial of a motion for a new trial.

(b) To an acting fiduciary in this court.

(c) To a party to a construction proceeding.

(d) To a person named as executor in some will who participates in a contested probate.

(e) A special guardian.

3. He may not allow disbursements other than those taxable in the Supreme Court to any person except

(a) An acting fiduciary in this court.

(b) To a party to a construction proceeding.

(c) An executor named in a will.

The costs, allowances or disbursements which may be awarded are, under section 276, payable from the estate, from a particular portion thereof, or by a party personally, in the discretion of the surrogate, except in the case of an allowance on sale of real property,

in which instance, by the express provisions of section 281, the allowance is to be made from the proceeds of the sale brought into court by the fiduciary.

In this review the provisions of section 231-a have been eliminated, since it seems quite apparent from the logically satisfactory exposition of Surrogate FEELY (*Matter of O'Brien*, 146 Misc. 555, 560 *et seq.*) that the purpose of this section is not to award costs or allowances, but, except in rare instances (See *Matter of Hirsch*, 154 Misc. 736, 739, and authorities cited), merely to provide a means of adjudicating the rights of an attorney against his client for compensation for services rendered.

It follows, therefore, that there is no statutory authority pursuant to which the court is authorized to grant the present application.

Whereas the result is obvious from the standpoint hereinbefore discussed, it is equally so when viewed in the light of the nature of the present litigation. The proceeding is one to vacate an order of adoption. Prior to the enactment contained in chapter 368 of the Laws of 1934 the surrogate had no jurisdiction of such an application (*Stevens* v. *Halstead*, 181 App. Div. 198), all powers in this regard residing solely in the Supreme Court. The enactment in question granted concurrent jurisdiction to the surrogate. It is primary that where such concurrent jurisdiction is granted to another tribunal, it should be exercised in the same manner which was customary in the tribunal possessing the primary authority. (*Matter of Ashner*, 231 App. Div. 127, 130.) The court is familiar with no instance in which a litigant in the Supreme Court has been permitted to obtain a copy of the minutes of hearing other than at his own expense, while such hearing was still pending and undetermined.

The application is accordingly denied, with costs.

Enter order on notice.