In the Matter of the Estate of GEORGE M. RYDER, Deceased.

Surrogate's Court, Kings County, October 14, 1935.

*Sidney M. Gottesman*, referee.

*William H. Stryker* [*John P. Carroll* of counsel], for the petitioner.

*Isidore Paley* [*John M. Wilson* of counsel], for the claimant.

WINGATE, S. The claimant in this proceeding presented to the executor a demand against the estate aggregating $4,150, made up of three items, namely, $2,600 for care of the decedent for 104 weeks, from September 3, 1930, to August 30, 1932, at the rate of

$25 per week; $1,500 for somewhat more extensive care for fifteen weeks from September 1, 1932, to December 16, 1932, and $50 for five days' care of his remains at the rate of $10 per day. This claim was initially wholly rejected and objections to the judicial settlement of the accounts of the executor, addressed solely to such rejection, were filed by the claimant.

Upon the indication by the court that a reference would be necessary to determine the issues, and before such order of reference was signed, the executor mailed to the claimant a duly executed and acknowledged notice which read as follows: " I, the undersigned, John B. Potter, executor of the last will and testament of George M. Ryder, deceased, do hereby allow the claim of May A. Boyd, heretofore presented to me as such executor against the estate of the said George M. Ryder, on or about July 8th, 1933, in the sum of Four Hundred Seventy-five ($475) Dollars, for services rendered to the decedent from September 1st, 1932, to December 16th, 1932, and for the claim of the said Mary A. Boyd for keeping the body or remains of said decedent in her house for a period of five days."

In spite of this notice, the claimant insisted on the total of her claim as originally presented, the order of reference was signed and the issues were fully litigated at protracted hearings which yielded a record of 445 pages.

The result attained by the referee is a total disallowance of the first $2,600 item of the claim and an allowance of the last two, aggregating $1,550, only to the extent of the $475 specified in the notice of allowance served on the claimant by the executor, this latter ruling being predicated solely on the notice of allowance itself.

The executor warmly contests this latter ruling on the ground that his notice to the claimant of a partial allowance of her asserted claim, was merely an offer which required acceptance by her within a reasonable time to become binding upon him, and that it was merely in substance an offer to buy peace. If such was its purpose, the intent was most skillfully and effectually concealed.

Although he does not so state, the position of the executor appears to be based on section 177 of the Civil Practice Act. The purpose of that section, as is implied in its title, is to regulate the mode of making an " offer to compromise." Whereas the wide divergence in practice in Surrogates' Courts in respect to claims against decedents' estates from that in vogue in other courts of record in the case of ordinary demands, would seem to make this section of doubtful applicability here, it is sufficient for present purposes to note that the writing in the present instance did not comply with the section, since it failed to include an offer of costs (*Loring* v. *Morrison*, 25 App. Div. 139, 140), and is, therefore, a nullity so far as the

provisions of the statute are concerned. (*Leslie* v. *Walrath*, 45 Hun, 18, 19.) It was, however, an express admission in the particulars hereinafter noted.

The proof of claim in so far as the notice of the executor impinged upon it, in effect alleged two causes of action on *quantum meruit*. The former, to the effect that the claimant had performed specified services for the decedent for a period of fifteen weeks, and that the reasonable value thereof was $100 a week; the second, that she had cared for the remains of the deceased for five days, and that the reasonable remuneration therefor was $10 per day. For recovery of the amounts claimed, two demonstrations were required in respect to each alleged service, namely, *first*, that the respective services had been performed, and, *second*, that they were of the values alleged, these being the elements universally present in any cause of action on *quantum meruit*. (*Shirk* v. *Brookfield*, 77 App. Div. 295, 298; *Winch* v. *Warner*, 186 id. 710, 713; *Featherstone* v. *Fowler*, 174 id. 452.)

By the notice served by him, in which he professed expressly to " allow the claim " for the two alleged items of service to the extent of $475, the executor did three things, *first*, he stipulated the first essential element which the claimant must prove to entitle her to a recovery, namely, her rendition of the two varieties of service; *second*, he conceded that the services thus admittedly rendered were worth a total of $475, computed perhaps at $30 per week for the former and $5 per day for the latter; and, *third*, he traversed the second element, of claimant's customary proof respecting the reasonable value of such services, to the effect that the former item of service was worth $100 a week and the latter $10 a day.

These admissions, formally executed and submitted, absolutely entitled the claimant to a payment of $475 for the two items of services. If she chose to accept this sum in full for her remuneration in this regard, no further action on her part was necessary. If, however, she elected to pursue the matter further, it was open to her to litigate the sole question which remained unadmitted, namely, as to whether the services rendered by her were not, as she claimed, worth a greater sum than that which had been conceded.

In the present case she elected to go to trial before the referee. It was apparently her original intention to litigate not only the question of the reasonable value of the last two sets of services but the issue of the rendition of service and its value in respect to the $2,600 item. During the course of the trial she withdrew her contentions respecting the admitted items, electing to stand on the admission, and leaving for determination only the issue respecting the $2,600 claim. This has been decided against her.

It follows that the sole issues between the parties at the inception of the reference, namely, as to the right of the claimant to recover anything on the $2,600 claim, and to receive more than $475 on the other two claims, have been determined adversely to her, since the court fully concurs in the decision of the referee.

Were the claimant not to be compelled to pay the entire expenses of the proceeding which she thus precipitated, she would, in effect, although totally unsuccessful, be in the position of penalizing the estate for her own actions which, as proved by the event, were wholly unjustified. Such a result would be wholly contrary to the basic theory of costs summarized in the statement " *victus victori in expensis condemnatus est.*" (*Stevens* v. *Central Nat. Bank*, 168 N. Y. 560, 566; *Matter of Manzi*, 155 Misc. 670, 672; *Matter of Wolke*, 155 id. 235, 236.)

It follows that the entire expenses of the reference must be assessed against the claimant.

Enter decree on notice.