In the Matter of the Estate of JANE ROSENBERG, Also Known as JENNIE ROSENBERG LANGER, JEAN BERGH, and JEAN or J. HIGNELL, Deceased.

Surrogate's Court, Kings County, December 4, 1935.

*Henry Albert*, for the petitioner, Rose L. Schwobel, individually and as administratrix.

*Schneider & Groggins [Stanley S. Groggins* of counsel], for the respondents.

Wingate, S.   The present proceeding marks the renascence of a proceeding instituted over four years ago, which, in its meanderings through the courts, and its result in the Court of Appeals, has assumed, to a moderate degree, the position of a *cause celebre.*

The applicant now seeks an order to compel her former attorneys to make restitution to her of the fixed sum of $2,750, which is the amount which this court, in a former proceeding under section 231-a, determined to be the excess over a reasonable allowance exacted from her by these attorneys.   Any evaluation of her right to this relief necessarily involves an analysis of the former proceeding and of the subsequent legislative action which its disposition by the Court of Appeals provoked.

In November, 1931, the administratrix of this estate filed her petition in this court alleging that her former attorneys had induced her to pay them fees in an unreasonable and excessive amount and praying a direction that the sums so paid be returned to the estate, and that the fair and reasonable value of the compensation due the attorneys for their services be fixed.

The usual process of this court issued, calling upon the attorneys to demonstrate why the desired relief should not be granted and was duly served upon them.   Upon its return, they filed an answer to the allegations of the petition in the usual form required by the procedure of this court, denying its material allegations.

Thereafter, the issues thus raised were duly tried by the court, and after full examination of witnesses and hearing of argument, a decision was rendered, which, in effect, determined that the fees paid, which totaled the sum of $7,750, were excessive by the amount of $2,750, and that the attorneys should restore this excessive sum to the funds of the estate.

The respondent attorneys appealed to the Appellate Division, which affirmed the decree of the surrogate, with one justice dissenting (240 App. Div. 730).

Thereafter the respondents appealed to the Court of Appeals, which, by a divided court (Judge, now Chief Judge, CRANE filing a vigorous dissenting opinion), reversed the result (263 N. Y. 357), determining (p. 361) that " an attorney has the right to have claims against him established by action, except only in the case where he withholds money or property from his client which he is in duty bound to turn over to such client. There he may be dealt with summarily as an officer of the court."

In attaining this result, the majority of the Court of Appeals distinguished the present case from the situation existing in *Matter of Anderson* (136 Misc. 110; 232 App. Div. 704; 257 N. Y. 592), on the ground that whereas the surrogate was therein determined to have jurisdiction to compel restitution by an attorney who had retained an unreasonable sum for fees from estate funds in his hands, he had no power to compel such restitution by an attorney who had induced the estate representative to make payment of such exorbitant fee to him from funds not already in his hands.

This court had felt that since, in section 40 of the Surrogate's Court Act, the surrogate had been expressly authorized " to administer justice in all matters relating to the affairs of decedents, * * * and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, * * * as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter," since the Court of Appeals itself had clearly approved the statement that " ' Concentration of jurisdiction as to decedent's estates * * * is the purpose clearly revealed in the statutory scheme ' " (*Matter of Raymond* v. *Davis*, 248 N. Y. 67, 72), and since this was a question in which the estate of this decedent was vitally interested, the legislative intent in the enactment contemplated a retention of jurisdiction for the determination of the question. The Court of Appeals, however, decided that this would amount to an extension of jurisdiction beyond the legislative contemplation.

In this connection the Legislature promptly and decisively vindicated the truth of the statement made in *Matter of Morris*

(134 Misc. 374, 380) that " The Surrogates' Courts have been vested ' with constantly increasing powers ' and, particularly in recent years, every judicial suggestion of any limitation on their power to fully and completely determine all matters affecting decedents' estates, has been promptly followed by a decisive legislative reversal in the form of a change in, and broadening of, the statutory grant of jurisdiction."

The session assembled at the time of the rendering of the decision by the Court of Appeals, almost simultaneously with its publication in the reporter advance sheets, made an addition to section 231-a of the Surrogate's Court Act which read: " In the event that any such attorney has already received or been paid a sum in excess of the fair value of his services as thus determined, the Surrogate shall have power to direct him to refund such excess." (Laws of 1934, chap. 332.)

The power of the surrogate to pass upon the question involved, having thus been finally determined by the ultimate authority of the chosen representatives of the citizenry themselves, the question is presented as to the mode in which this power shall be exercised.

Starting with the premise that prior to the legislative addition made by the noted enactment, the Surrogate's Court had no jurisdiction in such a case, which, under the prevalent system of judicial tribunals, is an uncontrovertible legal fact, it follows that the effect of the statute is to make an express grant of such jurisdiction to the surrogate in those cases in which the question involves the estate of a decedent. Since, under the determination of the Court of Appeals, such jurisdiction formerly resided solely in the Supreme Court, the result of the statute amounts merely to the enlargement of the remedy formerly available to the suitor, by opening to him an additional tribunal in which relief may be sought.

The respondent in this proceeding earnestly contends that the statute should not be given a retroactive effect, and that this action should be instituted and determined in the Supreme Court. He cites no authority for the position that an alleged wrongdoer possesses a vested right to be called to book by a particular tribunal, and the court is familiar with none. The unbroken tenor of decisions on the subject is to the effect that the alteration or extension of a remedy, so long as it does not amount to a substantial impairment of then existing rights, is deemed to be retroactive. (*Penniman's Case*, 103 U. S. 714, 720; *United States* v. *Union Pacific Ry. Co.*, 98 id. 569, 606; *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429, 441; *Levy Leasing Co.* v. *Siegel*, Id. 634, 635; *Sackheim* v. *Pigueron*, 215 id. 62, 73; *Ives* v. *South Buffalo Railway Co.*, 201 id. 271, 298; *Matter of Davies*, 168 id. 89, 110; *Howard* v. *Moot*, 64

id. 262, 268; *Matter of Trustees of New York Protestant Episcopal Public School,* 31 id. 574, 585; *Commissioner of Public Welfare* v. *Nelson,* 232 App. Div. 763; *Persons* v. *Gardner,* 42 id. 490, 497; *Matter of Cohen,* 149 Misc. 765, 780; *Matter of Reppucci,* 145 id. 671, 675.)

As the court points out in *Ives* v. *South Buffalo Railway Co.* (*supra*): " The state has complete control over the remedies which it offers to suitors in its courts even to the point of making them applicable to rights or equities already in existence."

Since, therefore, the alteration in the statute looks only to the remedy, it is available in any proceeding instituted after its effective date.

An additional consideration of importance flows from this grant of concurrent jurisdiction to the Surrogate's Court of a matter over which the Supreme Court formerly possessed sole authority, in the principle that the manner of exercise of the power given should be as nearly similar in both tribunals as their standard modes of procedure will permit. (*Matter of Ashner,* 231 App. Div. 127, 130; *Matter of Manzi* [*Tietjen*], 155 Misc. 670, 677.)

At this point, a certain amount of perplexity is injected into the consideration by the language of the Court of Appeals in passing upon the former application. As noted, that was an independent proceeding under section 231-a of the Surrogate's Court Act. Reference is made in several places in the opinion of the Court of Appeals to a " summary proceeding," the holding being that recovery in a " summary proceeding " was improper in such a case, and that relief should be by " action." An inference results that the court deemed the proceeding theretofore had in the Surrogate's Court to be such a " summary proceeding." It is, therefore, essential in any evaluation of the remedy accorded the petitioner by the enactment under consideration, to determine what the Court of Appeals had in mind as to the proper form of action for a determination of the petitioner's rights.

The only " summary proceeding " which is recognized as such in the Civil Practice Act is that regulated by article 83, which relates to summary proceedings to recover possession of real property, and all New York judicial definitions of a " summary proceeding " which have been found relate only to a proceeding of this particular nature. (See, *e. g., Seymour* v. *Hughes,* 55 Misc. 248, 249, and authorities cited.)

In this situation, examination must be made into the statements of other authorities for an ascertainment of the peculiar characteristics of a proceeding of general nature which warrant the appellation of " summary." In Bouvier's Law Dictionary [3d

Rawle's Rev.] the definition is given as " A form of trial in which the ancient established course of legal proceedings is disregarded, especially in the matter of trial by jury, and, in the case of the heavier crimes, presentment by a grand jury."

This definition follows that given in 4 Blackstone Commentaries, 280, and has in substance been adopted in a number of decisions of other States. (See *Phillips* v. *Phillips*, 8 N. J. Law, 122, 124; *Govan* v. *Jackson*, 32 Ark. 553, 557.)

A statement that the procedure adopted in this case constituted a " summary proceeding " because it did not conform to " the ancient established course of legal proceedings," is, however, merely a begging of the entire question, since that itself is the matter presently subject to examination.

A search of the reports discloses a number of cases in the Supreme Court in which an attempt was made to have the fees of an attorney for one of the parties fixed on motion as a purely incidental matter to the action or proceeding to which such attorney was not a party of record. (See, *e. g., Matter of Hess*, 133 App. Div. 654; *Pilkington* v. *Brooklyn Heights R. R. Co.*, 49 id. 22; *Schriever* v. *Brooklyn Heights Railroad Co.*, Id. 629.) In the first of these cases the pending proceeding was an accounting by an executor, the other two being actions for negligence. In none was the attorney who sought to have his compensation fixed on motion an actual party. A determination made in such a manner might well be termed " summary," since it would amount to a decision of the question of the mutual rights and liabilities of the attorney and client without the issuance of direct process, the one against the other, and presumably with extreme informality of allegation and reply. This, however, is not the nature of a proceeding under section 231-a in the Surrogate's Court.

It is a fact familiar to all practitioners in Surrogates' Courts that each proceeding in the various steps of settlement of a decedent's estate is separate and distinct from every other. (*Matter of Abruzzo*, 139 Misc. 559, 563.) Indeed, this is wholly patent from an examination of the provisions of the Surrogate's Court Act relative to the institution of the various proceedings authorized. In each instance provision is made for the issuance of a distinct process *de novo*, as each of the successive steps leading to a final judicial settlement is initiated. In each such proceeding the new process must be personally served upon the parties themselves and cannot be served upon counsel who have appeared for them in any previous proceeding in the same court in relation to the same estate. Thus, the first proceeding in a testate estate is usually the probate of the will, which is regulated by article 9 of the Surrogate's Court Act,

with the persons to be served enumerated in section 140 thereof. This may be followed by an entirely separate and distinct proceeding for a discovery of property withheld under section 205, or an application for revocation of letters under sections 99 and 100 or to pay funeral expenses under section 216 or a legacy or debt under section 217. In most cases, the final proceeding is for a judicial settlement under article 14. Each of these proceedings is, however, entirely separate and distinct from each of the others. The captions differ, the parties thereto are frequently materially diverse, process is served anew in each, and each receives final disposition by a decree.

That this condition applies in like degree to a proceeding for fixation of attorneys' fees under section 231-a, has frequently been pointed out, it being well established that a proceeding for fixation of fees must be brought on by the issuance and service of an entirely new process specifically entitled in that proceeding and served upon the parties interested, and may not be brought on by motion. (*Matter of Parsons*, 121 Misc. 747, 750; affd., 208 App. Div. 769; *Matter of Dix*, 144 Misc. 494, 495; *Matter of Mosessohn*, 145 id. 378.) (See, also, *Matter of Kruger*, 139 Misc. 907, 913.)

In this respect a probate or other proceeding in the Surrogate's Court is just as distinct from a proceeding for fixation of fees under section 231-a as, for example, an action for negligence in the Supreme Court and a subsequent action in the same court between one of the parties to the negligence action and his attorney relating to the remuneration of the latter for the services rendered to the former in such negligence action.

In conformity with the procedure prevalent in the Surrogate's Court the former proceeding herein was begun by the presentation of a petition and the issuance of an order directing the respondents to show cause before the court on a stated date and at a specified time why the relief sought should not be granted. This process was personally served upon them. They appeared and submitted to the jurisdiction of the court and filed an answer traversing the allegations of the petition. The issues thus raised were set down for trial and were duly tried after full examination of tendered witnesses. As the result of this trial the determination of the court was reached. In view of these facts, it is somewhat difficult to see why the proceeding was any more " summary " than the preparation of a summons in the Supreme Court with complaint attached, its service upon the defendant in the action, his filing an answer to the allegations of the complaint, the trial of the issues thus raised and a determination of the rights of the parties as a result. In essence, the only differences between the two proceedings are that the

initiating process in the one case is an order to show cause, whereas in the other it is a summons, and the fact that in the Surrogate's Court disposition of the issues can, in the ordinary course of events, be made in fewer weeks than it would require years in the Supreme Court.

No point can be made respecting any deprivation of the right to trial by jury, since, under the provisions of section 68 of the Surrogate's Court Act, any party possessing a constitutional right to trial by jury may, by timely demand, secure it in the Surrogate's Court with equal facility to that with which it may be obtained in the Supreme Court. Suffice to say in this connection that in the proceeding heretofore had. no jury was demanded, wherefore, under the provisions of section 67 of the Surrogate's Court Act the right to such trial was deemed to have been waived in the same way that waiver would have resulted from non-action in the Supreme Court. (Civ. Prac. Act, § 426.)

In this situation only two conclusions suggest themselves as explaining the references to " summary proceeding " which were made by the Court of Appeals. The first, that the learned judges of that tribunal were unfamiliar with the usual procedure in the Surrogates' Courts, indulges an inadmissible inference. The *second* is that the purport of the decision was merely to the effect that as the law then existed, trial should be had in the Supreme Court, the references to " summary proceeding " being merely in the nature of dicta having no necessary bearing upon the decision.

As a result of this analysis it appears obvious that in a proceeding for the recovery from an attorney of an allegedly exorbitant fee, no matter when the rights matured, the Surrogate's Court has jurisdiction to determine the question by the ordinary process and in the usual manner heretofore in vogue in applications under section 231-a of the Surrogate's Court Act, but that in such proceeding either party is entitled to the same rights and privileges which would have been accorded him had an action for the same relief been instituted in the Supreme Court, including a right to jury trial, if seasonably demanded, and if warranted by the issues raised in the pleadings.

The present proceeding, however, goes further in that it seeks a summary direction by this court to the respondents to turn over to the estate the sum of $2,750, which is the amount which, in the previous proceeding, this court determined to be the excess received over the reasonable sum allowable. The theory of this proceeding is that the decision of the Court of Appeals affected merely the right of this court to direct the return of the specified sum and that the determination heretofore made by this court respecting what such

reasonable sum was, was not overturned by the Court of Appeals and is now *res adjudicata*.

It may readily be conceded that the original form of the prayer for relief sought this dual determination. It is, however, primary that the nature of an action must be determined from the allegations of the complaint and not from the prayer for relief. (*Ross v. McCaldin*, 195 N. Y. 210, 212; *Ketcham v. Wilbur*, 218 App. Div. 350, 351; affd., 244 N. Y. 609; *Kennagh v. McColgan*, 6 N. Y. Supp. 244, 245, reported by memorandum only, 53 Hun, 635.)

The essence of the proceeding was either one based on constructive fraud, or for money had and received, in which the determination of the amount due the plaintiff, if anything, was inescapably interwoven with the claimed right to an award of payment thereof. (*Ives v. South Buffalo R. Co.*, 201 N. Y. 271, 282.)

It follows, therefore, that whereas the result of the Court of Appeals was denominated a modification it was in fact an absolute and complete reversal since it determined that the court was wholly without authority to award the ultimate and essential relief which the applicant sought. Being without jurisdiction it necessarily followed that it was powerless to take any of the steps necessary for the achieving of the ultimate result in consequence of which its entire action in the proceeding was a nullity.

It follows that the present application based on the partial validity of the previous adjudication of the court must be dismissed. The proper procedure of the applicant, if she elects to proceed further in this court, is to institute an entirely new proceeding for the relief prayed in her original application.

The present proceeding is accordingly dismissed, without costs and without prejudice to such further action or proceeding as the applicant may deem wise in the premises.

Enter decree on notice.