In the Matter of the Estate of JENNIE PAYNE, Deceased.

Surrogate's Court, Kings County, November 25, 1941.

*Harold Flatto*, for George Gordon Payne, an executor, etc., of James Carleton Payne, deceased executor of Jennie Payne, for the application.

*Gerdes & Montgomery* [*W. Randolph Montgomery, Charles G. Stevenson* and *Stewart Maurice* of counsel], for H. Parker Reader and Marceline Payne, two of the executors of the estate of James Carleton Payne, deceased executor of Jennie Payne, opposed.

WINGATE, S. This is an application by the attorney for George Gordon Payne for an allowance for services rendered in an accounting in the estate of Jennie Payne, to be paid by the estate of James Carleton Payne. The court is not familiar with any precedent adjudicating a situation similar to the present, and none has been called to its attention.

Jennie Payne died a resident of this county on January 16, 1930, her will being admitted to probate in this court on the twenty-sixth day of the same month. By its terms her estate was divided in equal shares between her four children, Marion Jeanette Reader, James Carleton Payne, George Gordon Payne and Frank Hulbert Payne. James Carleton Payne was named and duly qualified as executor.

James died, a resident of Miami, Fla., on May 26, 1938, and on June 24, 1938, letters testamentary upon his estate were issued to his widow, Marceline Payne, his brother-in-law, H. Parker Reader, and his brother, George Gordon Payne.

On May 2, 1939, an application was made to this court by Frank Hulbert Payne, as a distributee of Jennie, to compel the executors of her deceased executor, James, to render and settle an account of his proceedings in that capacity. In compliance with a direction to that effect Mr. Reader filed an account on June 12, 1939, which was duly adopted by his co-executrix, Marceline, on June twentieth. Objections to this account were filed by Frank Hulbert Payne on June twenty-sixth, their gist being the failure of the executors of the deceased executor to debit him with the value of a printing business, allegedly belonging to Jennie.

Prior to December, 1939, George, the third executor of the deceased executor James, and one of the four distributees of Jennie, had not joined in the account or taken any action respecting the proceeding except to appear and file an answer submitting the objections of Frank for the decision of the court, but on December fourth an order was made on the consent of his attorney directing him, also, to account as one of the executors of James for the acts of the latter as executor of Jennie. In the account filed by him, through the present applicant, he virtually joined forces with the objector, Frank Hulbert Payne, by asserting the accountability of his testator, as executor for Jennie, for the business, the ownership of which by Jennie was asserted by the objector.

The issue respecting the ownership of the business was fully tried before Hon. Oscar A. Lewis, as referee, the record demonstrating that George and Frank collaborated fully in attempting to surcharge the testator of the former for this alleged asset of Jennie. The learned referee in an elaborate and painstaking report concluded that the business did not belong to Jennie, but was the individual property of James with the result that he was not accountable therefor as executor of Jennie. This report has been confirmed.

The attorney for George now importunes this court to compensate him *from the estate of his testator, James,* for his efforts in attempting to sustain the erroneous position that this testator for whom he is a cofiduciary should be surcharged to the extent of from $100,000 to $500,000, depending upon which valuation of the business is to be accepted as correct.

It is, of course, obvious that the major portion of the activities of George and his attorney were not addressed to the performance of his natural fiduciary duty of protecting the estate of his decedent, James, from depletion by extraneous demands. On the contrary, they were devoted almost exclusively to an effort to further the personal pretensions of George and Frank, as distributees of Jennie, at the expense of the estate of James. Had they been successful in bringing this additional asset into Jennie's estate, they might well have laid claim, in their capacities as her distributees, to compensation for the service which they had rendered her estate in that regard. (See *Matter of Hirsch,* 154 Misc. 736.)

As matters have eventuated, however, the only right which George or his attorney possesses is to some indemnification for the expense attendant upon the performance of the duty imposed upon him by section 257 of the Surrogate's Court Act of accounting for the acts of his testator as executor of Jennie's estate. (*Matter of Morrisey,* 171 Misc. 204, 205.) This right, however, is primarily against the estate of Jennie, and cannot, in any case, be extended

to cover his preponderant activities in unsuccessfully seeking the increase of his individual rights as a distributee thereof.

He does not, however, seek remuneration from the estate of Jennie, but from that of his own testator, James, to injure which he has used every expedient which the ingenuity of his counsel could devise.

It is elementary that costs, and allowances, which are merely costs applicable to particular varieties of litigations (*Matter of Manzi* [*Tietjen*], 155 Misc. 670, 673; *Matter of Lyons*, 160 id. 429, 430), may be awarded only pursuant to the terms of some identifiable statute. (*Osborn* v. *Cardeza*, 208 N. Y. 131, 134; *People* v. *Three Barrels Full*, 236 id. 175, 177; *Scherl* v. *Flam*, 136 App. Div. 753, 755.) The present applicant has neglected to point out the particular statutory authority pursuant to which he makes the present application. The only authorizations in this regard which are contained in the Surrogate's Court Act are found in section 231-a and in the several sections of article 15.

Confining attention to the sources from which the awards therein contemplated are permissible, the former authorizes payment " from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein." This obviously supplies no justification for a direction of payment from any estate other than that of Jennie.

The sources specified in section 276 are that costs " may be made payable by the party personally, or out of the estate, or fund, or out of the share or interest therein of any person * * *." In the present instance there is no estate or fund before the court except that of Jennie. The estate of James is pending before the Surrogate's Court of Dade County, Florida, and this court possesses no authority over it and would consequently be powerless to render a decree binding upon it for the payment of a portion of its assets to the petitioner.

A decree *in personam* against the other two executors would be unthinkable in view of their complete success in defeating the attack upon their estate launched by their associate. It would also be incompatible with the policy of this State as demonstrated by the repeal of section 160 of the Decedent Estate Law (Laws of 1926, chap. 660). (*Matter of DeBaun*, 162 Misc. 111, 112, 113; *Matter of Bradford*, 165 id. 736, 737; *Matter of Munn*, 168 id. 648, 649.)

In so far as the services of the applicant are compensable other than by his own client individually, it is because they have accomplished a necessary duty in respect of Jennie's estate which is naturally the primary source of payment. If, however, recompense is not obtainable therefrom, the only remaining source is from the assets

of James' estate. These, however, are within the exclusive jurisdiction of the Florida court, from which relief must be sought.

The application will accordingly be denied without prejudice to an application for similar relief to a Florida court of competent jurisdiction.

Enter decree on notice in conformity herewith.