## In the Matter of the Estate of MICHAEL WINBURN, Deceased.

Surrogate's Court, New York County, June 4, 1936.

*Joseph M. Proskauer* and *Sperry & Yankauer* [*Walter D. Yankauer, J. Alvin Van Bergh* and *Harry Silverman* of counsel], for the petitioners.

*Olvany, Eisner & Donnelly* [*James F. Donnelly* and *Samuel Michelman* of counsel], for the executors and trustees.

*Gibboney, O'Brien & Hays* [*Stuart G. Gibboney* of counsel], for the ancillary administrator c. t. a. of the estate of Marie Renard, deceased.

*Murray Levine*, for Phœbe Cohen, respondent.

*Monroe Percy Bloch* [*Simon Klein* of counsel], for Ruth Anekstein (niece).

*Roe & Kramer* [*Charles P. Kramer* of counsel], for Eva Clayburgh and John Winburn, respondents.

*Stahl & Stahl* [*Isaac Stahl* of counsel], for the administrator of Hattie Wineburgh Estate, deceased niece.

*Bert Cohn*, for Carrie Shelley and Harold M. Shelley, respondents.

*Frederic E. Klein* appearing in person for himself and Harry Miller.

FOLEY, S.  This is a proceeding brought under section 231-a of the Surrogate's Court Act.  It was initiated by three petitioning attorneys who represented next of kin and distributees of the estate of Michael Winburn who are entitled to take three-eighteenths of the intestate property.  Dispute arose in the probate proceeding as to the construction of the will.  The will was admitted and the question of construction reserved for determination by supplemental decree.  The surrogate determined that the testator by its terms had made a valid and complete disposition of his entire estate. The Appellate Division affirmed.  The Court of Appeals reversed and held that one-half of the residue, except two legacies, passed by intestacy to the next of kin and distributees.  (*Matter of Winburn,* 265 N. Y. 366; motion for reargument and to amend the remittitur denied, 266 id. 501; further motion to amend the remittitur denied,

270 id. 196.) The intestate fund amounts to approximately $1,000,000.

No controversy has arisen or exists as between the petitioning attorneys and their own clients. The petitioning attorneys, however, now claim that they are entitled to payment out of the estate generally or out of the intestate fund or out of the shares of those next of kin not represented by them who obtained a financial benefit by reason of the decisions of the Court of Appeals. Out of the general group of distributees only their clients took the appeal from the Appellate Division to the Court of Appeals. The remaining next of kin participated as parties and respondents on that appeal. (270 N. Y. 196.)

The application is denied in the exercise of the discretion of the surrogate and as a matter of law. The petitioning attorneys and their distinguished counsel admittedly rendered effective services in obtaining ultimate success, but neither the circumstances of the case nor a reasonable construction of the provisions of section 231-a of the Surrogate's Court Act justify the making of the allowance which they seek. They say their services are worth $100,000. Under their agreements with their own clients they have become entitled to the payment of approximately $15,000. Their retainers with certain of these clients called for the payment of seven and one-half per cent of the amount ultimately recovered. As to the others, the retainer provided that ten per cent was to be the measure of compensation. They apparently seek to apply the latter percentage rate as against the shares of the distributees whom they did not represent in either this court or in the appellate courts.

There is some indication on the part of the petitioners of a claim that they were "requested" to carry the case to the Court of Appeals by distributees not directly represented by them. I find as a fact that no agreement to represent such other distributees was ever made.

All of these distributees were represented by their own attorneys. They were the widow of the decedent, and subsequently the legal representative of her estate, the decedent's two sisters, his brother and a further class of nephews and nieces. Each of these various distributees will be required to pay his or her own attorney. In some cases the charge of the attorney directly representing the distributee was based upon a contingent agreement for the payment of fifty per cent of the amount ultimately obtained for the client. In the case of the two sisters of the decedent, who were the life tenants of the trusts declared to be ineffective and void by the Court of Appeals, they have actually suffered a serious financial loss by reason of the efforts of the petitioning attorneys

and the final determination of intestacy. Thus as to one sister, the pecuniary value of her interest under the will was $150,000 and by intestacy $50,000, a loss to her of $100,000. The pecuniary interest of the other sister was reduced by the determination of intestacy from $200,000 to $50,000 or a loss of $150,000. To attempt to charge these two distributees with any part of the fee claimed by the petitioners would be manifestly unjust. If the matter, therefore, was to be determined as one solely of discretion, the surrogate, under the special facts and circumstances, would not exercise his discretion in making any allowances whatsoever either out of the general estate or out of the intestate fund or out of the shares of the respective distributees whom the petitioners did not represent.

In addition, I am of the opinion that a reasonable interpretation of the legislative intent in the enactment of section 231-a of the Surrogate's Court Act requires a denial of the application as a matter of law. That section was drafted in its original form and recommended for passage to the Legislature by former Presiding Justice DOWLING of the Appellate Division, First Department, and by the writer of this decision. It was intended to provide an expeditious, simple and effective remedy for determining all sorts of disputes between an attorney and the representative of an estate, and an attorney and his client, whether legatee, beneficiary or distributee by intestacy. Protection was intended to be afforded to the attorney and the rights of the beneficiaries or client were to be equally safeguarded by the court. The terms of the section contemplated three varying sources of payment of the reasonable value or agreed compensation when judicially determined: (1) to the attorney for the representative of the estate, payment was to be directed to be made out of the general estate; (2) to the attorney for a legatee, life tenant, remainderman or distributee by intestacy, payment was to be directed to be made out of the respective share or interest of the client; (3) in extraordinary and exceptional cases where an attorney for one of the persons interested had rendered services which resulted to the benefit of the general estate, payment might be directed to be made by the surrogate out of the general estate.

In my decision in *Matter of Parsons* (121 Misc. 747; affd. on opinion below, 208 App. Div. 769), rendered shortly after the enactment of this section, I explained its general purpose. The Court of Appeals has traced the prior jurisdiction of the Surrogate's Court to fix the compensation of attorneys and the effect of the new section in *Matter of Matheson* (265 N. Y. 81) and *Matter of Proctor* (267 id. 109). In *Matter of Parsons* (*supra*), I also referred to the exceptional case mentioned in paragraph 3 above.

I indicated, by way of dictum, that an allowance to an attorney for a beneficiary who had rendered services resulting in advantage to the estate by a surcharge of the executor, administrator or other legal representative, might properly be charged against and paid from " the estate generally " under the language of section 231-a. In *Matter of Lounsberry* (226 App. Div. 291) certain legatees, representing a portion of the estate, brought a discovery proceeding through their attorney to compel a daughter of the decedent to restore specific assets. They were successful. Through their efforts the general estate and other beneficiaries profited. The court held that the reasonable value of the services of their attorney should be charged out of the general estate under the terms of section 231-a. (See, also, *Matter of Vorndran*, 132 Misc. 611; *Matter of Rosenberg*, 147 id. 517; affd., 241 App. Div. 601; *Matter of Hirsch*, 154 Misc. 736.) But under these authorities there must be a finding that the estate generally has been benefited before payment out of the estate may be decreed. (*Matter of Chaves*, 143 Misc. 872; *Matter of Conne*, 147 id. 116.)

There is not the slightest indication, however, in the context of the section of any legislative intent that the charges ·of the attorney for one *individual* party, whether legatee or distributee, should be paid out of the shares of other *individual* parties. Such is the situation here. No funds were brought back into the estate as in a surcharge case. The dispute only arose as to testacy or intestacy.

The Surrogate's Court is without power to make allowances excepting when expressly authorized by statute. In 1925 section 278 of the Surrogate's Court Act was amended so as to permit the making of allowances for counsel fees for services upon an appeal rendered to an executor, administrator, guardian or trustee. No authority whatsoever existed for the making of allowances to attorneys for a party, other than an executor, administrator, guardian or trustee, in a proceeding involving the construction of a will until the enactment of the amendment made in 1928 to section 278. Thereafter, allowances might be made in proceedings involving construction, but only for services of an attorney rendered in the Surrogate's Court. None might be made for services rendered in the appellate courts. (*Matter of Watson*, 241 App. Div. 842; affd., 264 N. Y. 697; *Matter of Lydig*, 149 Misc. 598.)

Finally, in 1935,* allowances were authorized for services on appeal to a party other than an executor, guardian or trustee, in proceedings involving a construction, by a further amendment, which became effective on September first of that year. Its terms,

---

* Laws of 1935, chap. 597.—- [REP.

however, have no application to the pending proceeding since the first and second decisions of the Court of Appeals and the order on remittitur were made before the effective date of the amendment.

The amendment of 1935 was plainly prospective and not retroactive in its application. In this respect the situation here is similar to that involved in *Matter of Daly* (180 App. Div. 307; affd., 223 N. Y. 671). There the Appellate Division of the First Department held that the amendment made in 1914 to section 2753 of the Code of Civil Procedure (which is now section 285 of the Surrogate's Court Act), which authorizes the surrogate to allow to an executor, who is an attorney, reasonable compensation for his professional services to the estate, was not retroactive. " It takes a clear expression of the legislative purpose to justify a retroactive application. ' (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240.)

The second motion to amend the remittitur was made, submitted and decided after September 1, 1935. The services rendered by the petitioning attorneys on that motion do not justify an allowance under the provisions of section 278 of the Surrogate's Court Act. Such an allowance is denied in the exercise of the discretion of the surrogate and, particularly, because the petitioning attorneys on that motion opposed the claims of the distributees, other than their own clients, to share in the fund. (*Matter of Winburn*, 270 N. Y. 196.)

There is a clear distinction between services rendered for the benefit of an estate and services claimed to have been rendered in disputes between individual beneficiaries of an estate. Surrogate WINGATE, in *Matter of Cannariato* (159 Misc. 409), emphasized this distinction. (Citing *Matter of Weissmann*, 137 Misc. 113, 119; affd. on opinion of this court, 232 App. Div. 698.) So in the present situation, not the slightest benefit resulted to the general estate from the efforts of the petitioning attorneys. They were successful in obtaining a determination that a substantial part of the will was invalid and that intestacy resulted. The effect of that decision was to decree that part of the property, which was always in the estate, was to be distributed to one set of individuals instead of to the members of another group. A purely personal right of the successful group was vindicated. Section 231-a gives no authority to the surrogate to impose the additional burden of a charge of one group of attorneys upon the shares of other individuals who are obligated to pay their own attorneys.

It should be noted that the award of excessive or unjustified allowances in the Surrogate's Court to the detriment of the rights of heirs and legatees is not countenanced. That rule has been a fixed policy of this court.

A somewhat similar situation to that here sometimes arises in partition actions where one of the individual heirs or devisees has been successful in obtaining a benefit by judicial determination not only for himself, but for others having the same interests. To correct the former abuses which existed in this form of action, the Legislature saw fit to limit the statutory allowances which might be judicially made out of the proceeds of the sale of the real property. (Civ. Prac. Act, §§ 1512, 1513 and 1514; *Warren* v. *Warren*, 203 N. Y. 250.)

The various authorities cited by the petitioners have no application to the law and facts in the present controversy. Certain of them apply to allowances to an attorney for a successful plaintiff in a stockholder's action, where the power and authority to award compensation is similar to our jurisdiction in surcharge cases, the corporation and the stockholders being equivalent in their status to the general estate and the beneficiaries. *Matter of Buttner* (215 App. Div. 62), also cited in support of the petitioners' contention, must be deemed to have been overruled by the decision of the Court of Appeals in *Matter of Watson* (264 N. Y. 697, affg. 241 App. Div. 842). In *Matter of Buttner* it was indicated that an award might be made for services to counsel representing remaindermen in a proceeding for the construction of a will. It was further indicated that the proper procedure was an application under section 231-a of the Surrogate's Court Act. The distinction, under the provisions of the Surrogate's Court Act, between an allowance in a construction proceeding and the compensation of an attorney fixed under section 231-a, is clear and these two forms of proceedings and the method of award should be kept separate. Where the facts do not justify an allowance under section 278 of the Surrogate's Court Act, they cannot be used as a basis for an award of compensation under section 231-a. Allowances can only be made in the Surrogate's Court within the statutory grant of power and authority given to the surrogate. As I have heretofore shown, legislative power for the granting of allowances to a party (other than an executor, administrator, guardian or trustee) in a will construction proceeding for services rendered upon an appeal, did not exist until long after the first decision of the Court of Appeals in this estate.

The petitioning attorneys might have obtained an allowance for services rendered in the Surrogate's Court in the construction proceeding if they had seasonably applied for it. They failed to do so, and their subsequent application to amend the original decree to obtain such allowance was denied because of lack of power. (*Matter of Starbuck*, 248 N. Y. 555; *Matter of Winburn*, N. Y. L. J. Nov. 7, 1931.) The appeal from the order denying the allowance

was subsequently abandoned by the petitioners. After the decision by the Appellate Division, a further application was made for an allowance for services rendered upon the appeal, which was denied because of the absence of authority under the provisions of section 278, as then existing. (*Matter of Winburn*, N. Y. L. J. Feb. 7, 1934, p. 645; *Matter of Lydig, supra; Matter of Watson, supra.*) The appeal of the petitioners from the order denying the application was afterwards withdrawn by them.

Certainly no court has ever held that, aside from the award of statutory costs and allowances, the charge of an attorney for a successful party could be imposed directly upon the shares of other parties similarly situated because of their individual rights. The effect of such an attempted charge here would be to impose by judicial fiat the relation of attorney and client where no contract, express or implied, nor any agreement of hiring ever existed.

Submit order on notice denying the application accordingly.