FIRST DEPARTMENT, APRIL, 1962

## (April 3, 1962)

■ In the Matter of the Estate of ADRIAN R. ALLAN, Deceased. VIRGINIA A. CARTER, Appellant; ADRIAN R. ALLAN, JR., et al., as Executors of ADRIAN R. ALLAN, Deceased, et al., Respondents.

APPEAL from that part of a decree of the New York County Surrogate's Court, entered October 18, 1960 which dismissed appellant's claim in the sum of $24,000 for services rendered to the estate.

MEMORANDUM BY THE COURT. Decree entered October 18, 1960, disallowing and dismissing respondent-appellant's claim in the sum of $24,000 and dismissing her filed objections to the intermediate account of the executors, affirmed, with costs to all parties submitting briefs payable out of the estate. Appellant contends she caused the widow to withdraw her election under section 18 of the Decedent Estate Law; that the withdrawal was a benefit to the estate; and that she rendered services compensable out of the estate. There is no direct proof that appellant caused the widow to withdraw her election. The sequence of events on which appellant relies fails to establish by inference or otherwise that appellant caused the widow to withdraw her lawful right of election. The alleged undervaluation of the cattle, at decedent's Maryland farm was rectified after the dispersal sale on June 5, 1954 and the sale prices were set forth in the Federal estate tax returns filed Decmber 6, 1954, prior to the widow's withdrawal of her notice of election on June 10, 1955. Further, there is no proof that the widow's withdrawal of her election was a benefit to the estate; or that appellant has rendered services compensable out of the general estate. Even if it be assumed *arguendo* that the withdrawal of the election was causally related to appellant's efforts, her right to reimbursement and compensation is not established. The widow was entitled to her elective share and to dispose of it as she saw fit. The general estate was not increased as a result of appellant's efforts. The estate fund available for distribution before taxes remained exactly the same. The widow's failure to exercise her statutory right of election increased the estate taxes by about $300,000 and made available an additional $240,000 for distribution to the appellant and persons other than the widow, who otherwise would have been entitled to her elective share with the tax advantage of her marital deduction. Involved is a private controversy among the beneficiaries as to the quantum of their respective shares. The fact that appellant and beneficiaries other than the decedent's widow may have gained by the efforts of the appellant does not constitute a basis for reimbursement from the general estate. (*Matter of Winburn*, 160 Misc. 49; *Matter of Ziegler*, 170 Misc. 748.) Appellant's reliance on *Matter of Smith* (167 Misc. 95) is misplaced for there it clearly appeared the efforts of the objector and his counsel brought into the estate

the sum of $40,000, whereas in the instant case appellant's efforts did not in the slightest increase or advantage the general estate. In the absence of an agreement we find no basis, statutory or otherwise, for the claim here involved, and it is not within the power of the Surrogate to grant allowances or to compensate except as provided by statute. (*Matter of Winburn, supra.*) We are not here concerned with the right of reimbursement of an executor or trustee which includes legal services reasonably required to sustain the status of the fiduciary. (Cf. *Jessup* v. *Smith,* 223 N. Y. 203; *Matter of Pelgram,* 146 Misc. 750, revd. 239 App. Div. 18.) Furthermore, in no aspect of section 231-a of the Surrogate's Court Act are services other than professional legal services compensable. Appellant's alleged services do not fall within the category of legal services.

BREITEL, J. (dissenting). I dissent and vote to reverse, on the law and the facts, so much of the decree of the Surrogate as disallowed objectant's claim for an allowance for services rendered to the estate and, in the exercise of discretion, to remand the proceeding to the Surrogate to fix the value of the services and to take proof concerning reimbursable expenses.

The sequence of events was such, together with the conceded motivation of the widow, that the inference is all but inescapable that it was objectant's efforts which caused the termination of the combined plan to undervalue assets and assert the widow's right of election. The absence of explanation on the record for the widow's withdrawal of her election leaves such withdrawal as accountable only by the fact that the objectant, as one of the distributees, was embarrassing the combined plan.

The estate was benefited in several ways. First, because the plan was abandoned by the widow's withdrawal of her right of election there was no longer a practical way of accomplishing the undervaluation of assets and yet satisfying the distributees that they would receive their proper shares. Thus, the distributees were saved the risk of relying on the unenforcible word of the widow, that she would distribute excess assets received by her under the election. Second, the estate was saved the risk of tax penalties in the event the plan for undervaluation met condemnation at the hands of the taxing authorities. Moreover, I would accept as a benefit to the estate that it was compelled by reason of objectant's activities to pay fair taxes, sanctions or not. All of these objectives were furthered, if not wholly accomplished, by reason of objectant's activities.

A leading text writer in this field has stated the applicable rule under section 231-a of the Surrogate's Court Act as follows: "It is not necessary for it to appear that actual assets have been added to the estate property by the services of the attorney for these to be regarded as beneficial to the estate. The decisions of the courts have gone far beyond this. It has been said that 'to be beneficial, it need not be shown that net tangible monetary advantage was realized or that a money loss was avoided. The administration of trust property does not permit so simplified a test of "benefit"'. The word applies to every aspect of administration which sound judgment would approve. If in the carrying on of such an administration legal services are required, either in defense or in attack, the fiduciary may contract for or may pay and receive allowance for reasonable fees." (3 Warren's Heaton, Surrogates' Courts [6th ed.], § 295, par. 4, p. 735.) Earlier in discussing the rule (pp. 731-732) the text writer pointed out that the rule is applicable to those who act where the fiduciary should have acted. Thus, it was said: "There is a further factor that has been taken into consideration in some cases. Actually in these cases the services can be said to be for the benefit of the estate. However, in at least one such case a distinction was made with regard

to services performed by an attorney for an interested party which should have been performed by the estate attorney. *Matter of Geller,* 167 Misc. 578, 4 N. Y. Supp. (2d) 467. As to this, it was said in the *Geller* case that in any instance in which the nominated or presumptive fiduciary neglects his natural duties after a reasonable interval for their performance has elapsed, it is in the general interest that they should be performed by some other interested party and in so far as they are thus successfully performed, the substitute is rightly entitled to subrogation to the rights which the fiduciary would have enjoyed had he himself performed them, at least, to the extent of exoneration from attendant expense. All relevant authorities, the court said, indicate that such right has been universally recognized in respect of the recovery of assets. [Cases cited.]" Of course, the measure of the allowance is the value of the legal services rendered at the instance of the distributee (pp. 734–735). This, indeed, was the point in the prior decision in this court under which the objections were dismissed, but with leave to replead in order to show a proper foundation for the alleged services rendered (*Matter of Allan,* 5 A D 2d 453, 455, affd. 5 N Y 2d 333).

Rabin, McNally and Stevens, JJ., concur in Memorandum; Botein, P. J., concurs in affirmance of the decree on the ground that objectant has failed to establish satisfactorily that her efforts were responsible for the alleged benefits to the estate; and Breitel, J., who dissents in opinion.

Decree entered October 18, 1960, disallowing and dismissing respondent-appellant's claim in the sum of $24,000 and dismissing her filed objections to the intermediate account of the executors, affirmed, with costs to all parties submitting briefs payable out of the estate.